ORIGINAL

# In the United States Court of Federal Claims

**Nos. 12-42C; 12-4208C; 12-4209C; 12-4210C; 12-4211C; 12-4212C;**
**12-4213C; 12-4214C; 12-4215C; 12-4216C; 12-4217C; 12-4218C**
**Filed: January 22, 2015**

**FILED**

JAN 2 2 2015

U.S. COURT OF
FEDERAL CLAIMS

\* \* \* \* \* \* \* \* \* \* \* \* \* \*   \*

**CASEY D. ALLEN, NATHAN ALLEN,**      \*
**JOHN BRACK, BRADLEY**                \*
**CHRISTENSEN, DANIEL FAWCETT,**       \*
**CARRIE LANDON, JUSTIN MOYA,**        \*
**GREGORY P. OFNER, ARTHUR**           \*    <u>Pro Se</u> Plaintiffs; Motion for
**WESLEY PRESTON, NICHOLAS**           \*    Partial Summary Judgment;
**RILEY, BRIAN SEXTON, RYAN**          \*    Breach of Contract; Contract
**WEBSTER,**                           \*    Interpretation.
                                       \*
      **Plaintiffs,**                 \*
                                       \*
    **v.**                             \*
                                       \*
**UNITED STATES,**                     \*
                                       \*
      **Defendant.**                  \*
                                       \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \*   \*

    **Casey D. Allen**, **Nathan Allen**, **John Brack**, **Bradley Christensen**, **Daniel Fawcett**, **Carrie Landon**, **Justin Moya**, **Gregory P. Ofner**, **Arthur Wesley Preston**, **Nicholas Riley**, **Brian Sexton**, **Ryan Webster**, each plaintiff <u>pro se</u>.

    **Sharon A. Snyder**, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With her were **Joyce R. Branda**, Acting Assistant Attorney General, Civil Division, and **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch.

**O P I N I O N**

<u>HORN, J.</u>

**FINDINGS OF FACT**

    Plaintiffs are twelve current or former employees of the United States Department of Agriculture, Forest Service (Forest Service), employed in the Los Padres National Forest in California, who filed a complaint to recover $2,500,000.00 in

damages.[1] According to plaintiffs, the damages were caused by the January 15, 2008 Los Padres National Forest Quarters Policy announced by the Los Padres National Forest Unit of the Forest Service. Plaintiffs claim that the January 15, 2008 Los Padres National Forest Quarters Policy negatively affects their agreements with the Forest Service for rental of mobile home pads under two theories: count one, Fifth Amendment taking claims, and count two, breach of contract claims.[2] Under the taking theory, plaintiffs claim that the January 15, 2008 Los Padres National Forest Quarters Policy caused a substantial diminution in the value of their mobile homes, or caused plaintiffs to be unable to sell their mobile homes, which they allege constitutes an uncompensated taking of plaintiffs' property.[3] Under the breach of contract theory, plaintiffs claim that the January 15, 2008 Los Padres National Forest Quarters Policy constitutes a breach of plaintiffs' existing "leases and/or contractual relationships" with the Forest Service. After discovery, defendant moved for partial summary judgment on count two of the plaintiffs' complaint, the breach of contract claims, which is the subject of this opinion.

The original complaint brought by these plaintiffs was filed in the United States District Court for the Central District of California on behalf of the plaintiffs by counsel.

---

[1] The complaint was originally filed by twenty plaintiffs. Of those, eight of the plaintiffs have since been dismissed. Charles Glendinning indicated to the court that he did not wish to participate in the litigation. Dennis Bouslaugh was dismissed after plaintiffs' counsel at the time was unable to locate him. Plaintiffs Flemming Bertelsen, Douglas Browand, Kerry Kellogg, Faith Nielson, Gary Peterson, and Michael Watt were all dismissed for failure to respond to the court's Order to Show Cause. The remaining plaintiffs are Casey D. Allen, Case No. 12-42C; Nathan Allen, Case No. 12-4208C; John Brack, Case No. 12-4209C; Bradley Christensen, Case No. 12-4210C; Daniel Fawcett, Case No. 12-4211C; Carrie Landon, Case No. 12-4212C; Justin Moya, Case No. 12-4213C; Gregory P. Ofner, Case No. 12-4214C; Arthur Wesley Preston, Case No. 12-4215C; Nicholas Riley, Case No. 12-4216C; Brian Sexton, Case No. 12-4217C; and Ryan Webster, Case No. 12-4218C. The remaining cases were consolidated with the lead case as Case No. 12-42C.

[2] In their complaint filed in this court, plaintiffs collectively seek $2,500,000.00 for both the taking claims and the breach of contract claims. The total was not amended or revised after certain plaintiffs were dismissed and the remaining cases were consolidated.

[3] Defendant previously filed a partial motion to dismiss count one, the taking claims, under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC) (2014), for failure to state a claim on which relief can be granted. After discussion with the parties, the court stayed defendant's motion to dismiss the taking claims in order to allow discovery to continue on count two, the breach of contract claims, and to provide further information to the parties as to count one. After discovery ended, defendant filed the instant motion for partial summary judgment, regarding count two, the breach of contract claims. Defendant has not raised any jurisdictional challenges to count two.

Subsequently, however, plaintiffs filed a stipulation of dismissal in that court, and the District Court dismissed the complaint, without prejudice. See Casey D. Allen, et al., v. Ed Schafer, et al., No. 08-8391 (C.D. Cal. Dec. 8, 2009). Several years later, plaintiffs filed their complaint in the United States Court of Federal Claims, represented by different counsel. After a series of further events, plaintiffs now are representing themselves in this court pro se.[4]

Plaintiffs allege they currently own, or have owned, mobile homes located on mobile home pads in the Los Padres National Forest in California. While represented by Bennett Rolfe, plaintiffs' attorney of record at the time, plaintiffs and the government negotiated, agreed upon, and filed a Joint Stipulation of Facts, which has not been called into question subsequently by any of the plaintiffs and has been cited to by a number of the plaintiffs in their responses to defendant's motion for partial summary judgment. The parties stipulated that the Los Padres National Forest is owned by the United States and managed by the Forest Service. The Forest Service manages numerous mobile home pads throughout the Los Padres National Forest and provides electric hookups, power, water, and sewer suitable for the mobile homes. Plaintiffs entered into rental agreements with the Forest Service to place their mobile homes on the mobile home pads in the Los Padres National Forest. Plaintiffs' complaint alleges:

> At various times prior to January of 2008, the FOREST SERVICE entered into leases and/or contractual relationships with Plaintiffs and/or their predecessors in interest for mobile home pads under which Plaintiffs were given the right to place mobile homes upon such pads and occupy them for an indefinite period of time so long as they remained employed by the FOREST SERVICE at or near the location of the pads and agreed to certain terms and conditions, including periodic rent increases. Plaintiffs or their predecessors in interest were permitted to sell the mobile homes on the pads, provided that they sold them to other FOREST SERVICE employees. Those employees, in turn would have the same rights of occupancy and sale as the Plaintiffs.

(capitalization in original and internal citation omitted).

Plaintiffs further allege that they relied on the "leases and/or contractual relationships" with the Forest Service in various ways, including "by purchasing new or used mobile homes for placement on the pads, purchasing mobile homes already on the pads and entering into financing arrangements with lenders to acquire the mobile homes." Plaintiffs allege that they believed they would be able to occupy the mobile home pads "for an indefinite period of time so long as they remained employed by the

---

[4] Plaintiffs' original attorney of record in this court was Michael D. Daniels. Subsequently, Bennett Rolfe, who was one of the original attorneys in the District Court case, replaced Mr. Daniels as plaintiffs' counsel. After Mr. Rolfe passed away, certain plaintiffs filed motions to represent themselves pro se, which the court granted, continuing their cases pursuant to the initial complaint filed by the plaintiffs in this court.

FOREST SERVICE at or near the location of the pads and agreed to certain terms and conditions, including periodic rent increases." (capitalization in original). Plaintiffs allege that they "were permitted to sell the mobile homes on the pads, provided that they sold them to other FOREST SERVICE employees" and that "[t]hose employees, in turn would have the same rights of occupancy and sale as the Plaintiffs." (capitalization in original). The Joint Stipulation of Facts states that, "[p]laintiffs based their belief that they could stay in the mobile home park for as long as they were employed by the Forest Service based upon general knowledge or common knowledge or word of mouth."

As also stipulated to by the parties, plaintiffs lease, or have leased, mobile home pads in three areas of the Los Padres National Forest: Santa Barbara, California; Ojai, California; and Monterey, California. The parties jointly stipulated that, at or around the time when Forest Service employees moved into the mobile home parks, they received a set of documents regarding their tenancy and monthly rent, which the court collectively referred to as the Forest Service Standard Rent Documents. As reflected in the record before the court, the first two pages of the Forest Service Standard Rent Documents are titled Monthly Base Rent Computation Schedule and Monthly Net Rent Computation Schedule and include computation of the base rent and additional rental charges (the Rent Computation Schedules). The third and fourth pages include a Government Quarters Inventory, which identifies information specific to each tenant's rental pad and owned mobile home. These first four pages do not contain a place for a Forest Service employee or an agency representative signature. The next page of the document set includes a Tenant Rent Notice, which provides information regarding adjustments in rent, as well as a place for the tenant's signature, but not for an agency representative's signature.

The following page after the Tenant Rent Notice includes the title, Quarters Assignment Agreement, which provides the specific rent and the date upon which occupancy begins, but does not provide a place for tenant's signature. The page titled Quarters Assignment Agreement provides, in relevant part: "If occupant is an Agency/Bureau employee, occupancy shall end upon expiration of occupant's employment at this location, unless previously terminated at the option of either party upon 90 days written notice." (emphasis in original). The final page of the Forest Service Standard Rent Documents bears the title General Terms and Conditions and includes provisions for when a pad occupant can be evicted. The General Terms and Conditions provide, in relevant part:

1. Occupant may be evicted by the Agency/Bureau for: (1) breach of this Agreement; (2) refusal to sign this or subsequent Quarters Assignment Agreements; (3) termination of this agreement; or (4) for being a serious threat to the public health or welfare.

2. The premises shall be used for residence purposes only. It shall not be assigned or sublet by occupant in whole or in part, nor shall any business

be conducted on the premises unless authorized in writing by the Agency/Bureau head or his/her designated representative.

This last page of the Forest Service Standard Rent Documents, the General Terms and Conditions, contains a place for signatures by both an "Agency/Bureau Representative" and the "Occupant."

Attached to defendant's partial motion for summary judgment is the Declaration of Judy Reynolds, the Property Management Officer responsible for preparing the Forest Service Standard Rent Documents, which Ms. Reynolds refers to as "a seven-page Rent Computation Schedule." In her declaration, Ms. Reynolds described the final page of the Forest Service Standard Rent Documents, the General Terms and Conditions, as follows: "Page 7 of the document is the Terms and Conditions of the overall agreement. The tenant is required to sign this page of the document and return it to me." (internal citation omitted). The Reynolds declaration further provides,

> [e]ach year I send the 7-page Rent Computation Schedule to the administrative assistant at the forest who is then responsible for providing the document to each tenant. Each tenant is required to sign pages 5 [the Tenant Rent Notice] and 7 [the General Terms and Conditions], and return those pages to the administrative assistant who then returns them to me.

The Appendix to the Joint Stipulation of Facts reflects for each plaintiff a set of the Forest Service Standard Rent Documents, although, based on the limited Appendix filed with the court, records for some plaintiffs contain only a partial set. In addition, most, but not all plaintiffs, received and/or signed copies of policies corresponding to the area of the forest where they leased a mobile home pad, including: the Los Prietos Mobile Home Park Rules and Regulations Policy, issued July 1988 (1988 Los Prietos Rules), the Los Padres National Forest Trailer or Mobile Home Space Rental Contract, issued June 2000 (June 2000 Los Padres Rental Contract), or the Ojai Ranger District General Housing Policies (Ojai Housing Policies). These various policies set terms for eligible Forest Service employees to rent the mobile home pads and to purchase, place, and sell their mobile homes to other eligible Forest Service employees. For example, the 1988 Los Prietos Rules provided that "[t]he park is to be used by Santa Barbara Ranger District (SBRD) employees with a permanent appointment" and that the "Owner may sell the trailer in place to a SBRD employee or Forest employee, SBRD employee having priority." The June 2000 Los Padres Rental Contract provided that "[o]nly employees with Los Padres National Forest duty station . . . will be allowed to live in Forest Service quarters" and "**[i]n the case that the tenant retires or is terminated from the Los Padres National Forest**, within 120 days of effective date, the tenant must either sell the trailer to another permanent employee, or remove the trailer/mobile home off Los Padres National Forest System land." (emphasis in original). The Ojai Housing Policies provided that "Government Housing will be for permanent full time employees only."

The parties jointly stipulated that "[w]hen plaintiffs decided to purchase their mobile homes from other Forest Service employees, many of the plaintiffs did not have those mobile homes appraised," including Nathan Allen, Bradley Christensen, Daniel Fawcett, Justin Moya, Gregory Ofner, Nicholas Riley, and Brian Sexton. As further provided in the Joint Stipulation of Facts, "[t]hose plaintiffs who have sold their mobile homes also did not have them appraised before they sold them." The Joint Stipulation of Facts also indicates that "Mr. Christensen and other plaintiffs purchased their mobile home for the asking price without any negotiation."

**The Los Prietos Plaintiffs**

Of the twelve plaintiffs remaining in the case, nine leased mobile home pads near Santa Barbara, California: Nathan Allen, John Brack, Bradley Christensen, Daniel Fawcett, Justin Moya, Gregory Ofner, Arthur Wesley Preston, Nicholas Riley, and Brian Sexton. As detailed below for all nine Los Prietos plaintiffs, the record before the court contains for each plaintiff at least one, partial set of the Forest Service Standard Rent Documents which contained a Quarters Assignment Agreement and the final page, the General Terms and Conditions, which each plaintiff signed. Eight of the nine Los Prietos plaintiffs also received and signed the 1988 Los Prietos Rules, including Nathan Allen, John Brack, Daniel Fawcett, Justin Moya, Gregory Ofner, Arthur Wesley Preston, Nicholas Riley, and Brian Sexton. One Los Prietos plaintiff, Bradley Christensen received a copy of the 1988 Los Prietos Rules before purchasing his mobile home, but cannot recall whether he signed it. The 1988 Los Prietos Rules provided the general guidelines for renting mobile home pads in the Los Prietos Mobile Home Park. As provided in the parties' Joint Stipulation of Facts, the 1988 Los Prietos Rules "do not provide that Forest Service employees may remain in the mobile home park for as long as they are employees of Los Padres National Forest," "do not guarantee that a Forest Service employee who sells his mobile home when he has been renting a mobile home pad in the Forest Service mobile home park will get a certain market price for the mobile home," "do not guarantee that, if a Forest Service employee sells his mobile home, he may reap the value of owner improvements or make a profit on the sale of his mobile home," and "do not guarantee that, if a Forest Service employee sells his mobile home, the buyer will have the same lease rights that the employee had when he purchased the mobile home."

One Los Prietos plaintiff, Brian Sexton, in addition to the Forest Service Standard Rent Documents and the 1988 Los Prietos Rules, also received and signed the June 2000 Los Padres Rental Contract. Like the 1988 Los Prietos Rules, the June 2000 Los Padres Rental Contract similarly contained guidelines for leasing mobile home pads in the Los Padres National Forest. The parties jointly have stipulated that the June 2000 Los Padres Rental Contract "does not provide that a Forest Service employee may continue to rent a mobile home pad as long as he is a Forest Service employee," and "[c]onversely, the rental contract does not state that a Forest Service employee may not continue to rent a mobile home pad as long as he is a Forest Service employee." Also, the parties jointly have stipulated that the June 2000 Los Padres Rental Contract "does

not state that the Forest Service employee to whom a mobile home is sold will have the same lease rights as the seller."

Nathan Allen

Nathan Allen became a permanent Forest Service employee in July 2004, and purchased a mobile home in April 2006 from another Forest Service employee for approximately $38,000.00, which was originally on sale for $41,000.00. Nathan Allen did not have his mobile home appraised before purchasing it. Although there is no signed version in the record, Nathan Allen indicated in his deposition, included in the Appendix to the Joint Stipulation of Facts,[5] that, upon renting a mobile home pad on April 10, 2006, he received and signed a copy of the 1988 Los Prietos Rules. In addition, the record reflects two sets of Forest Service Standard Rent Documents for Nathan Allen: one complete set of seven pages on which Nathan Allen signed the Tenant Rent Notice on April 10, 2006, but did not sign the final page, the General Terms and Conditions, and a second, complete set of seven pages in which he signed both the Tenant Rent Notice and the final page, the General Terms and Conditions, on March 20, 2007. In both sets of Forest Service Standard Rent Documents, Judy Reynolds signed the General Terms and Conditions as the Agency/Bureau Representative. Nathan Allen moved out in January 2011 because he accepted another position with the Forest Service in Ojai and did not want to commute a long distance. After having made various improvements on the mobile home, including the installation of new flooring, new kitchen countertops and sink, a new wood burning stove, and interior painting, Nathan Allen sold his mobile home to a Forest Service employee in January 2011 for $8,000.00, after originally pricing it to sell for $10,000.00.

John Brack

Based on the record before the court, Mr. Brack appears to have become a permanent Forest Service employee in September 1987, and retired on July 30, 2011. Upon retirement, Mr. Brack moved out of the Los Padres National Forest.[6] In May 2002, Mr. Brack purchased a mobile home for $11,000.00 and placed it on a mobile home pad in the Santa Barbara area of the Los Padres National Forest. On July 9, 2002, Mr. Brack signed a copy of the 1988 Los Prietos Rules, which also was signed by District

---

[5] Among other documents, the Appendix to the Joint Stipulation of Facts included excerpts of depositions for Nathan Allen, Bradley Christensen, Daniel Fawcett, Carrie Landon, Justin Moya, Gregory Ofner, Nicholas Riley and Brian Sexton, as well as Kerry Kellogg, a former plaintiff whose case has been dismissed.  It does not appear from the record that John Brack, Arthur Wesley Preston, Casey Allen, and Ryan Webster were deposed.

[6] The information regarding Mr. Brack's employment with, and retirement from, the Forest Service are stated in the defendant's motion for partial summary judgment. The details, although not confirmed, were not challenged in Mr. Brack's response to defendant's motion for partial summary judgment.

Ranger Sharon R. Sprouse on December 18, 2002. In the record before the court is a partial set of the Forest Service Standard Rent Documents for Mr. Brack containing four of the seven pages, including the two Rent Computation Schedules, a Tenant Rent Notice signed by Mr. Brack on January 13, 2003, and a Quarters Assignment Agreement. The two pages of the Government Quarters Inventory and the General Terms and Conditions page appear not to be in the record for this set of documents. The record also contains a different, partial, five page set of the Forest Service Standard Rent Documents, including only one of the two Rent Computation Schedules, titled Monthly Base Rent Computation Schedule, and only one of the two pages of the Government Quarters Inventory, as well as the Tenant Rent Notice, the Quarters Assignment Agreement, and the General Terms and Conditions. In this set, Mr. Brack signed the Tenant Rent Notice and the General Terms and Conditions on February 13, 2003, but an Agency/Bureau Representative did not sign the General Terms and Conditions. In 2007, Mr. Brack claims he made various repairs and upgrades to his mobile home to the kitchen, bathroom, window screens, screen room, floors, ceilings, and front deck at a cost of approximately $9,000.00. Upon his retirement, Mr. Brack sold his mobile home for $1,700.00. Mr. Brack alleges, without support that, before the change in policy, he would have been able to sell his mobile home for $15,000.00 to $20,000.00.

Daniel Fawcett

Mr. Fawcett began his employment with the Forest Service as an apprentice in 2006 and was employed by the Forest Service as a "detailed" assistant engineer. Mr. Fawcett purchased a mobile home on a mobile home pad from another Forest Service employee in June 2006 for approximately $26,700.00. Mr. Fawcett did not have his mobile home appraised before purchasing it. On July 25, 2006, Mr. Fawcett signed a copy of the 1988 Los Prietos Rules, which was not signed by an Agency/Bureau Representative. The record contains a complete, seven page set of the Forest Service Standard Rent Documents for Mr. Fawcett, which indicates that, on July 25, 2006, Mr. Fawcett signed the Tenant Rent Notice and the General Terms and Conditions. The record also contains another complete, seven page set of the Forest Service Standard Rent Documents for Mr. Fawcett, on which he signed the Tenant Rent Notice and the General Terms and Conditions on March 12, 2007. In both sets of Mr. Fawcett's Forest Service Standard Rent Documents, Judy Reynolds signed the General Terms and Conditions as the Agency/Bureau Representative. Mr. Fawcett sold his mobile home to another Forest Service employee in August 2010 for $4,000.00. Mr. Fawcett did not to respond to defendant's motion for partial summary judgment.

Justin Moya

Mr. Moya has been employed by the Forest Service since 2005, and, as of July 2012, he was an assistant fire engine operator in the Los Padres National Forest. Mr. Moya purchased a mobile home on a mobile home pad in May 2007. Mr. Moya purchased his mobile home from another Forest Service employee for the asking price of $90,000.00. The mobile home later was appraised for $75,000.00. According to his

response to defendant's motion for partial summary judgment, Mr. Moya indicated that, at the time of purchase, the mobile home "was worth the asking price based on age, condition, and availability of similar housing within the Forest for a similar price." Although there is no signed version in the record, Mr. Moya indicated he received and signed a copy of the 1988 Los Prietos Rules. The record contains a set of the Forest Service Standard Rent Documents for Mr. Moya, which, although containing eight pages, was only a partial set, because it did not contain one of the two Government Quarters Inventory pages. In addition, Mr. Moya's Forest Service Standard Rent Documents included two pages for the Rent Computation Schedules, two additional pages seemingly duplicative to the Rent Computation Schedules, the Tenant Rent Notice, the Quarters Assignment Agreement, and the General Terms and Conditions. On May 7, 2007, Mr. Moya signed the Tenant Rent Notice and the General Terms and Conditions. Judy Reynolds signed the General Terms and Conditions as the Agency/Bureau Representative. Mr. Moya claims that after the announcement of the January 15, 2008 Los Padres National Forest Quarters Policy, he will not be able to sell his mobile home for the price he expected to receive.

Gregory Ofner

Mr. Ofner has been employed by the Forest Service since 1996, and purchased a mobile home on a mobile home pad in December 2004. Mr. Ofner purchased this mobile home from another Forest Service employee for the asking price of $38,000.00. Mr. Ofner did not have his mobile home appraised before purchasing it. Although there is no signed version in the record, Mr. Ofner indicated that, upon renting a mobile home pad, Mr. Ofner received and signed a copy of the 1988 Los Prietos Rules. He indicated that, "[t]his original policy from 1988 was the only policy I signed and should be held to." The record contains a partial set of Forest Service Standard Rent Documents for Mr. Ofner with six of the seven pages, including the two Rent Computation Schedules, two pages of the Government Quarters Inventory, the Tenant Rent Notice signed by Mr. Ofner on April 6, 2006, and the Quarters Assignment Agreement, although the final page of the Forest Service Standard Rent Documents, the General Terms and Conditions, is not present in this set in the record. The record also contains a later, complete, seven page set of the Forest Service Standard Rent Documents for Mr. Ofner, including a Tenant Rent Notice and the final page, the General Terms and Conditions, both of which Mr. Ofner signed on March 10, 2007. Judy Reynolds signed the General Terms and Conditions as the Agency/Bureau Representative. Mr. Ofner made improvements to his mobile home, including upgrades to appliances, cabinets, carpet, hardwood floors, and the shed, totaling $15,000.00. Mr. Ofner indicated that sometime in 2008 or 2009, he moved out of the Los Padres National Forest, and sold his mobile home for $5,000.00.[7]

---

[7] As defendant notes in its motion for partial summary judgment, it is unclear from the record whether Mr. Ofner sold his mobile home prior to announcement of the new quarters policy on January 15, 2008. Defendant explains:

Arthur Wesley Preston

Mr. Preston appears to have been a Forest Service employee from June 1973 until his retirement in November 2009.[8] Mr. Preston purchased a mobile home in April 1980. In April 1986, he sold that home and purchased a new mobile home for $29,500.00. In his response to defendant's motion for partial summary judgment, Mr. Preston indicated that at the time of his purchase, he needed approval from the District Ranger to bring in a new mobile home and that he "was given approval to purchase the mobile homes." Also according to Mr. Preston, he made an agreement with District Ranger Patrick Pontes that he "was held to the mid 1970 Los Prietos Mobile Home Park Policy and Regulations." The record reflects that Mr. Preston signed the 1988 Los Prietos Rules on July 21, 1988, about two years after he moved into his second mobile home in April 1986, and that District Ranger Patrick Pontes signed on August 1, 1988. Mr. Preston alleges that he made improvements to the second mobile home of over $10,500.00, including upgrades to the appliances, counter tops, carpets, skirting, porches, flooring, and wood stove. The record contains a complete, seven page set of the Forest Service Standard Rent Documents for Mr. Preston on which he signed the Tenant Rent Notice and the General Terms and Conditions on February 7, 2005. Judy Reynolds signed the General Terms and Conditions as the Agency/Bureau Representative. Upon his retirement in October 2009, Mr. Preston sold his mobile home for $10,000.00.

Nicholas Riley

Mr. Riley has been employed by the Forest Service as a senior firefighter in the Los Padres National Forest. He moved into the Los Prietos Mobile Home Park in December 2007 and purchased a mobile home on a mobile home pad from another Forest Service employee for $35,000.00. Mr. Riley did not have his mobile home appraised before purchasing it. Although there is no signed version in the record, according to Mr. Riley, he signed a copy of the 1988 Los Prietos Rules on November 30, 2007. The record contains a complete, seven page set of the Forest Service

---

Mr. Ofner was never definite about the date when he moved out of his mobile home in the forest. He testified that he thought he sold the home in 2008 or 2009. However, one of the other Forest Service employees, Nicholas Riley, who moved into the Los Prietos Trailer Park in December 2007, testified that when he was purchasing his mobile home, Mr. Ofner's home was for sale.

(internal citations omitted).

[8] The information regarding Mr. Preston's employment with, and retirement from, the Forest Service are stated in the defendant's motion for partial summary judgment. The details, although not confirmed, were not challenged in Mr. Preston's response to defendant's motion for partial summary judgment.

Standard Rent Documents for Mr. Riley on which he signed the General Terms and Conditions on November 30, 2007, but he did not sign the Tenant Rent Notice. Judy Reynolds signed the General Terms and Conditions as the Agency/Bureau Representative. Mr. Riley indicated that when he does sell his mobile home, he believes he will be forced to sell it for a significantly reduced price than for what he purchased it.

Bradley Christensen

Mr. Christensen purchased a mobile home in the Los Padres National Forest in February 2005 that was already on a mobile home pad, placed by another Forest Service employee. Mr. Christensen paid $45,000.00 for the mobile home, without negotiation or appraisal, but later discovered that the seller previously only had paid $32,000.00. Upon purchasing his mobile home, Mr. Christensen believes he received and reviewed a copy of the 1988 Los Prietos Rules. Mr. Christensen does not recall if he signed the 1988 Los Prietos Rules and there is no signed copy in the record. The record contains a complete, seven page set of the Forest Service Standard Rent Documents for Mr. Christensen on which he signed the Tenant Rent Notice and the General Terms and Conditions on March 14, 2007.[9] Judy Reynolds signed the General Terms and Conditions as the Agency/Bureau Representative. Mr. Christensen made various improvements on his mobile home at a cost of approximately $20,000.00. Mr. Christensen claims that because of the new policy, he cannot sell his mobile home for the price he had expected to receive.

Brian Sexton

Mr. Sexton has been employed by the Forest Service, and has worked in the Los Padres National Forest, since approximately 1994. Mr. Sexton moved into the Los Prietos Mobile Home Park in the Santa Barbara Ranger District in May 2001 and purchased a mobile home for $1,500.00 from a Forest Service employee. Unlike the other Los Prietos plaintiffs, Mr. Sexton received and, on May 20, 2001, signed the June 2000 Los Padres Rental Contract. In addition, he received the Forest Service Standard Rent Documents and 1988 Los Prietos Rules. The June 2000 Los Padres Rental Contract also contained general rules for leasing mobile home pads in the Los Padres National Forest. The June 2000 Los Padres Rental Contract signed by Mr. Sexton, a copy of which is in the record, also was signed by District Ranger Sharon R. Sprouse on May 29, 2001.

On November 13, 2002, Mr. Sexton signed a copy of the 1988 Los Prietos Rules, which also was signed by District Ranger Sharon R. Sprouse. The record also contains a complete set of the Forest Service Standard Rent Documents for Mr. Sexton, including a Tenant Rent Notice and the General Terms and Conditions both signed by Mr. Sexton on February 28, 2003. Judy Reynolds signed the General Terms and

---

[9] Mr. Christensen contends, and the record reflects, that the Tenant Rent Notice and Quarters Assignment Agreement both have the occupant of plaintiff's trailer listed as Dean Millan, the previous owner.

Conditions as the Agency/Bureau Representative. This complete set of Forest Service Standard Rent Documents in the record for Mr. Sexton actually contains eight, instead of seven, pages because it includes two pages titled General Terms and Conditions: the first page reflects Mr. Sexton's signature as the Occupant but does not contain an Agency/Bureau Representative signature, and the second page reflects Mr. Sexton's signature as the Occupant and Judy Reynold's signature as the Agency/Bureau Representative. In 2004, Mr. Sexton replaced his mobile home and purchased a new mobile home for $96,000.00. Mr. Sexton made several improvements to his new mobile home, and, at the time of his deposition, still lived in the mobile home in the Los Prietos Mobile Home Park. Mr. Sexton contends that he will be unable to sell his home for the price he expected to receive for it.

**Monterey Plaintiffs**

Two plaintiffs, Casey Allen and Ryan Webster, lease mobile home pads in Monterey, California. The parties stipulated that there is no document like the 1988 Los Prietos Rules memorializing any general housing policies for that area or that pertains specifically to the mobile home sites in Monterey, except the information contained in the Forest Service Standard Rent Documents.

Casey Allen

From the record, it appears that Casey Allen purchased a mobile home in April 2004 for approximately $39,000.00, and placed it on a mobile home pad in the Pacific Valley Mobile Home Park, located near Monterey, California within the Los Padres National Forest. A complete, seven page set of the Forest Service Standard Rent Documents is in the record for Casey Allen. On January 20, 2005, Casey Allen signed the Tenant Rent Notice and the General Terms and Conditions. The Agency/Bureau Representative signature on the General Terms and Conditions page merely indicates a generic agency name, "USDA," and does not contain a specific individual's signature. Casey Allen did not respond to defendant's motion for partial summary judgment.

Ryan Webster

From the record, it appears that Mr. Webster became a Forest Service employee in June 1996, and purchased a mobile home in June 2001, which he placed on a mobile home pad in the Pacific Valley Mobile Home Park.[10] The record contains two sets of Forest Service Standard Rent Documents for Mr. Webster. The first is a partial set of Forest Service Standard Rent Documents containing five of the seven pages, including the two Rent Computation Schedules, the Tenant Rent Notice, the Quarters Assignment

---

[10] The information regarding Casey Allen's and Ryan Webster's employment with the Forest Service and purchase of their mobile homes are stated in defendant's motion for partial summary judgment. Casey Allen and Mr. Webster did not file responses to defendant's motion for partial summary judgment, so they have not challenged the factual allegations made by defendant.

Agreement, and the General Terms and Conditions, but not including the two pages of the Government Quarters Inventory. In this set, Mr. Webster signed the Tenant Rent Notice, as well as signed and dated the General Terms and Conditions on February 18, 2002. The second set is a complete, seven page set of Forest Service Standard Rent Documents, on which Mr. Webster signed the Tenant Rent Notice, as well as signed and dated the General Terms and Conditions on February 23, 2003. In both sets of documents, Mr. Webster signed, but did not date the Tenant Rent Notice, rather he signed and dated the final page of the set, the General Terms and Conditions. In both sets of documents, an Agency/Bureau Representative did not sign the General Terms and Conditions. Mr. Webster did not respond to defendant's motion for partial summary judgment.

## Ojai Plaintiff

<u>Carrie Landon</u>

One plaintiff, Carrie Landon, leased a mobile home pad in the Ojai Ranger District in Ojai, California within the Los Padres National Forest. Ms. Landon has been employed by the Forest Service since 1988 and, at the time of her deposition on July 25, 2012, was the District Fire Management Officer on the Ojai Ranger District in the Los Padres National Forest. Ms. Landon has lived on the mobile home pad in the Ojai Ranger District, Temascal Station, since 1994. For Ms. Landon, the record contains a partial set of Forest Service Standard Rent Documents including four pages, the two Rent Computation Schedules, the Tenant Rent Notice, which she signed on February 5, 2001, and the Quarters Assignment Agreement. In this partial set, however, the record does not include the remaining pages, the two pages of the Government Quarters Inventory or the final page, the General Terms and Conditions. The record also contains a partial set of the Forest Service Standard Rent Documents containing five of the seven pages, including the two Rent Computation Schedules, the Tenant Rent Notice, the Quarters Assignment Agreement, and the General Terms and Conditions, but not including the two pages of the Government Quarters Inventory. In this set, Ms. Landon signed the Tenant Rent Notice and the General Terms and Conditions on January 25, 2002. Judy Reynolds also signed the General Terms and Conditions as the Agency/Bureau Representative. Ms. Landon indicated, despite the documentation in the record, that the only documents she received regarding rental of the mobile home pad were "a stack of three, four pieces of paper that we have to sign and acknowledge we got. On there is some, like, rules." Ms. Landon indicated that she did not discuss the rules and regulations with anyone when she signed the documents. She indicated, however, that she believed that she would need written approval from the District Ranger if she wanted to make changes to her living arrangements. Ms. Landon purchased a new mobile home in 2006. Plaintiffs' initial disclosures reflect that Ms. Landon claims a purchase price of $79,070.00 and improvements of $3,000.00. At the time of her deposition Ms. Landon lived in her mobile home, although she stated she had purchased another home that she was renting out until she could sell her mobile home. Ms. Landon indicated that she had listed the mobile home for sale, but, since

2010, had received no offers, and, therefore, had been unable to sell it.[11] Ms. Landon did not to respond to defendant's motion for partial summary judgment.

Forest Service employees renting mobile home pads in the Ojai Ranger District, such as Ms. Landon, are subject to the Ojai Housing Policies, although Ms. Landon indicated that she does not recall receiving or signing a copy of such policies and the record does not reflect a signed copy of the Ojai Housing Policies for Ms. Landon. The parties' Joint Stipulation of Facts states that the Ojai Housing Policies "do not provide that Forest Service employees could remain in the mobile home park for as long as they are employees of Los Padres National Forest," "do not guarantee that a Forest Service employee who sells his mobile home when he has been renting a mobile home pad in the Forest Service mobile home park will get a certain market price or other price for the mobile home," "do not guarantee that, if a Forest Service employee sells his mobile home, he may recoup the value of owner improvements or make a profit on the sale of his home," and "do not guarantee that, when a Forest Service employee sells his mobile home, the purchaser of the mobile home will have the same lease rights as the employee had when he purchased the mobile home."

On January 15, 2008, the Los Padres National Forest Unit of the Forest Service announced that it had adopted a forest-wide quarters policy to replace any previous individual Los Padres quarters policies. As described above, all plaintiffs currently before the court had signed at least one document in the set of Forest Service Standard Rent Documents prior to the announcement of the new Los Padres National Forest Quarters Policy on January 15, 2008. The parties stipulated that the plaintiffs were not aware of the potential policy changes until the summer of 2007, at the earliest, when Forest Service employees were notified that Los Padres National Forest management had requested to enter into formal negotiations on the January 15, 2008 Los Padres National Forest Quarters Policy. The parties also stipulated, however, that "Forest Service employees who were fighting the Zaca fire during the summer of 2007 knew about new draft policy," including plaintiffs Nathan Allen and Justin Moya.

The January 15, 2008 Los Padres National Forest Quarters Policy contains several provisions that differ from the prior rental documents and agreements which had governed plaintiffs' rental of their mobile home pads.[12] Relevant to plaintiffs and as described in the parties' Joint Stipulation of Facts, the January 15, 2008 Los Padres National Forest Quarters Policy contains a "Transition Plan" which provides that "any Forest Service employee occupying mobile home parks at the time that the new Quarters Policy was implemented, would be able to sign agreements for one seven (7) year period," and, thereafter allows for subsequent annual one-year extensions if in the

---

[11] In its motion for partial summary judgment, defendant alleged, however, that "[u]pon information and belief, Carrie Landon has recently sold her mobile home . . . ."

[12] The January 15, 2008 Los Padres National Forest Quarters Policy, however, does not appear to provide a new mechanism for calculating the monthly rent for mobile home pads or for adjustments in rent.

"best interest of the government." For other tenants, the January 15, 2008 Los Padres National Forest Quarters Policy indicates that "rental agreements for mobile home pads in Los Padres limits tenancies to one five (5) year term," which can then be renewed annually for one year terms if the tenant requests an extension in writing 90 days prior to the expiration of the agreement. The January 15, 2008 Los Padres National Forest Quarters Policy provides that such annual extensions "will solely be based on the best interest of the government" and "are not guaranteed and will be ultimately be [sic] dependent on the amount of anticipated need for new incoming employees and detailers." The January 15, 2008 Los Padres National Forest Quarters Policy also provides that:

> Prior to the expiration of the Trailer/Mobile Home Pad Space Rental Agreement, the tenant is expected to remove the trailer/mobile home from government property and return the pad to the pre-occupancy condition. However, Existing Tenants will have the one-time option of selling to the next tenant assigned to the pad, and to avoid a conflict of interest, is responsible for disclosing to the buyer that he/she will not be able resell [sic] without first moving it off government property.

New documents were issued as part of the January 15, 2008 Los Padres National Forest Quarters Policy. Although not clear from the record before the court which documents were issued or when they were issued, the January 15, 2008 Los Padres National Forest Quarters Policy references a "Quarters Assignment Agreement (FS-6400-30)" as well as "Trailer/Mobile Home Pad Space Rental Agreements." As stipulated to by the parties, "[s]ome of the Los Padres employees who lived in the Forest Service mobile home parks entered into the new quarters agreements. Plaintiffs protested the change in policy and declined to enter into the new agreements." Plaintiffs allege:

> The new policy and the new rental agreements have caused Plaintiffs to experience severe financial losses, including the diminution in the market value of their mobile homes and/or inability to sell their mobile homes, and/or prospective severe financial losses related to removal of their mobile homes, and acquisition of substitute housing for themselves and their families.

Plaintiffs also allege that under the January 15, 2008 Los Padres National Forest Quarters Policy, "Plaintiffs were required to execute new rental agreements or be subject to eviction from the pads and required to remove their trailer homes therefrom."

As of the filing of the Joint Stipulation of Facts, none of the plaintiffs had been forced by the Forest Service to leave their mobile home pads and no plaintiff has since indicated to the court they have been removed from their mobile home pads.[13] The Joint

---

[13] Mr. Sexton alleges he was threatened with eviction and adverse, administrative action for refusal to sign a new housing agreement following the issuance of the January 15,

Stipulation of Facts also indicates that "[t]hose plaintiffs who sold their mobile homes after the new policy went into effect in January 2008, sold their mobile homes for less than they expected they would sell them for, and for less than they paid for them." Plaintiffs contended in their complaint that

> [t]he FOREST SERVICE has indicated that is reconsidering whether to adopt and enforce this new policy and require Plaintiffs to execute new rental agreements as aforesaid, but the fact that it has announced it, and may ultimately reaffirm the new policy and enforce it, has caused and is causing the aforesaid economic harms to the Plaintiffs.[14]

(capitalization in original).

Defendant filed a motion for partial summary judgment in this court pursuant to RCFC 56 on count two in the complaint, plaintiffs' breach of contract claims. Defendant argues that there is no evidence that the alleged rental agreements provide the Forest Service employees, or those Forest Service employees who purchased plaintiffs' mobile homes, guarantees that they could rent the mobile home pad for as long as they are employed by the Forest Service or could transfer their pad rental rights to those who buy their mobile homes.

Eight of the nine Los Prietos plaintiffs, Nathan Allen, John Brack, Justin Moya, Gregory Ofner, Arthur Wesley Preston, Bradley Christensen, Nicholas Riley, and Brian Sexton, responded to defendant's motion, in eight separate briefs. Daniel Fawcett did not respond. Although the separate briefs submitted by plaintiffs were very similar in content, they each contained some argumentative and factual distinctions. The

---

2008 Los Padres National Forest Quarters Policy, but there is no indication in the record that eviction or adverse, administrative action actually occurred.

[14] In their responses to defendant's motion for partial summary judgment, Los Prietos plaintiffs Nathan Allen, Bradley Christensen, Justin Moya, Gregory Ofner, Arthur Wesley Preston, Nicholas Riley, and Brian Sexton quote the following sentences included in a letter from Forest Supervisor Kenneth Heffner, which state: "I have been informed that the Region is working on a comprehensive quarter's policy. The Los Padres National Forest Quarters Policy will remain in effect until at least such time that the Regional policy is implemented. At that time the Forest Policy will be re-evaluated, and may be modified accordingly after fulfilling our bargaining obligations with the Union." The plaintiffs, therefore, assert that the letter made them believe that the Forest Service is, or at least was, reconsidering whether to adopt and enforce the January 15, 2008 Los Padres National Forest Quarters Policy. Defendant asserts that, despite plaintiffs' belief that the Forest Service is reconsidering adoption and enforcement, "[t]he 2008 Quarters Policy has been adopted and implemented by the Los Padres National Forest." Regardless, plaintiffs allege in their complaint that the mere announcement and potential enforcement has caused them economic harm.

responses filed by the eight plaintiffs generally contend that the terms of plaintiffs' alleged rental agreements are ambiguous because they do not specify length of stay. Brian Sexton, Bradley Christensen, Justin Moya, Gregory Ofner, John Brack, and Arthur Wesley Preston additionally allege that guarantees by a District Ranger that they would be allowed to stay in the mobile home park as long as they were employed by the Forest Service and abided by Forest Service policies establish the basis for their breach of contract claims.[15] Moreover, the eight plaintiffs, except for John Brack, contend, almost verbatim, that "[f]or 46 years the Forest Service managed the trailer park with the past practice of allowing employees to lease for the length of employment and to sell their mobile home while attached to forest service land without issue."

## DISCUSSION

Pleadings filed by pro se plaintiffs are entitled to liberal construction and judged by "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21, reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014). "The purpose of this relaxed standard is to ensure that the pro se plaintiff's case is evaluated on the merits and is not dismissed on the basis of technicalities." Ebert v. United States, 66 Fed. Cl. 287, 289 (2005) (citing Foman v. Davis, 371 U.S. 178, 181 (1962)). "[I]t has long been the role of this court to examine the record 'to see if [a pro se] plaintiff has a cause of action somewhere displayed.'" Ayres v. United States, 66 Fed. Cl. 551, 558 (2005) (alteration in Ayres v. United States) (quoting Ruderer v. United States, 188 Ct. Cl. 456, 468, 412 F.2d 1285 (1969), cert. denied, 398 U.S. 914 (1970)). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in Lengen v. United States) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Shelkofsky v. United States, No. 13-1016C, 2014 WL 5648973, at *4 (Fed. Cl. Nov. 4, 2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Goodman v. United States, 100 Fed. Cl. 289, 301 (2011).

RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure and is similar, both in language and effect. Both rules provide that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); Fed. R. Civ. P. 56(a) (2014); see also Alabama v. North Carolina, 560 U.S. 330, 344

---

[15] Brian Sexton, Bradley Christensen, Justin Moya, and Gregory Ofner refer to District Ranger Linda Riddle. John Brack refers to District Ranger Sharon Sprouse. Arthur Wesley Preston refers to District Ranger Patrick Pontes. In addition, plaintiff Carrie Landon, refers to District Ranger John Bridgewater.

(2010); <u>Hunt v. Cromartie</u>, 526 U.S. 541, 549 (1999); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986); <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Biery v. United States</u>, 753 F.3d 1279, 1286 (Fed. Cir.), <u>reh'g</u> and <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u> (Fed. Cir. 2014); <u>Ladd v. United States</u>, 713 F.3d 648, 651 (Fed. Cir. 2013); <u>Minkin v. Gibbons, P.C.</u>, 680 F.3d 1341, 1349 (Fed. Cir. 2012); <u>Noah Sys., Inc. v. Intuit Inc.</u>, 675 F.3d 1302, 1309-10 (Fed. Cir. 2012); <u>Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc.</u>, 674 F.3d 1365, 1372 (Fed. Cir.), <u>reh'g</u> and <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u> (Fed. Cir. 2012); <u>Fujitsu Ltd. v. Netgear Inc.</u>, 620 F.3d 1321, 1325 (Fed. Cir.), <u>reh'g denied</u> (Fed. Cir. 2010); <u>Consol. Coal Co. v. United States</u>, 615 F.3d 1378, 1380 (Fed. Cir.), <u>reh'g</u> and <u>reh'g</u> <u>en</u> <u>banc denied</u> (Fed. Cir. 2010); <u>cert. denied</u>, 131 S. Ct. 2990 (2011); <u>1st Home Liquidating Trust v. United States</u>, 581 F.3d 1350, 1355 (Fed. Cir. 2009); <u>Arko Exec. Servs., Inc. v. United States</u>, 553 F.3d 1375, 1378 (Fed. Cir. 2009); <u>Casitas Mun. Water Dist. v. United States</u>, 543 F.3d 1276, 1283 (Fed. Cir. 2008), <u>reh'g</u> and <u>reh'g</u> <u>en</u> <u>banc denied</u>, 556 F.3d 1329 (Fed. Cir. 2009); <u>Moden v. United States</u>, 404 F.3d 1335, 1342 (Fed. Cir.), <u>reh'g</u> and <u>reh'g</u> <u>en</u> <u>banc denied</u> (Fed. Cir. 2005); <u>Am. Pelagic Fishing Co., L.P. v. United States</u>, 379 F.3d 1363, 1370-71 (Fed. Cir.), <u>reh'g</u> <u>en</u> <u>banc denied</u> (Fed. Cir. 2004), <u>cert. denied</u>, 545 U.S. 1139 (2005); <u>Mata v. United States</u>, 114 Fed. Cl. 736, 744 (2014); <u>Leggitte v. United States</u>, 104 Fed. Cl. 315, 317 (2012); <u>Arranaga v. United States</u>, 103 Fed. Cl. 465, 467-68 (2012); <u>Cohen v. United States</u>, 100 Fed. Cl. 461, 469 (2011); <u>Boensel v. United States</u>, 99 Fed. Cl. 607, 610 (2011). A fact is material if it will make a difference in the result of a case under the governing law. <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248; <u>see also</u> <u>Marriott Int'l Resorts, L.P. v. United States</u>, 586 F.3d 962, 968 (Fed. Cir. 2009) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248); <u>Mata v. United States</u>, 114 Fed. Cl. at 744; <u>Arranaga v. United States</u>, 103 Fed. Cl. at 467-68; <u>Thompson v. United States</u>, 101 Fed. Cl. 416, 426 (2011); <u>Cohen v. United States</u>, 100 Fed. Cl. at 469. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 247-48; <u>see also</u> <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007); <u>Monon Corp. v. Stoughton Trailers, Inc.</u>, 239 F.3d 1253, 1257 (Fed. Cir. 2001); <u>Gorski v. United States</u>, 104 Fed. Cl. 605, 609 (2012); <u>Walker v. United States</u>, 79 Fed. Cl. 685, 692 (2008); <u>Curtis v. United States</u>, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), <u>cert. denied</u>, 361 U.S. 843 (1959), <u>reh'g denied</u>, 361 U.S. 941 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249; <u>see, e.g.</u>, <u>Schlup v. Delo</u>, 513 U.S. 298, 332 (1995); <u>Ford Motor Co. v. United States</u>, 157 F.3d 849, 854 (Fed. Cir. 1998) ("Due to the nature of the proceeding, courts do not make findings of fact on summary judgment."); <u>TigerSwan, Inc. v. United States</u>, 118 Fed. Cl. 447, 451 (2014); <u>Dana R. Hodges Trust v. United States</u>, 111 Fed. Cl. 452, 455 (2013); <u>Cohen v. United States</u>, 100 Fed. Cl. at 469-70; <u>Boensel v. United States</u>, 99 Fed. Cl. at 611; <u>Macy Elevator, Inc. v. United States</u>, 97 Fed. Cl. 708, 717 (2011); <u>Dick Pacific/GHEMM, JV ex rel. W.A. Botting Co. v. United States</u>, 87 Fed. Cl. 113, 126 (2009); <u>Johnson v. United States</u>, 49 Fed. Cl. 648, 651 (2001), <u>aff'd</u>, 52 F. App'x 507 (Fed. Cir. 2002), <u>published at</u> 317 F.3d 1331 (Fed. Cir. 2003). The judge must

determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 250-52; Jay v. Sec'y of Dep't of Health and Human Servs., 998 F.2d 979, 982 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1993); Leggitte v. United States, 104 Fed. Cl. at 316. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d at 1372; Marriott Int'l Resorts, L.P. v. United States, 586 F.3d at 968; Am. Seating Co. v. USSC Grp., Inc., 514 F.3d 1262, 1266 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2008); Rothe Dev. Corp. v. U.S. Dep't of Def., 262 F.3d 1306, 1316 (Fed. Cir. 2001); Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1553 n.3 (Fed. Cir. 1996). In such cases, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

In appropriate cases, summary judgment:

saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

Dehne v. United States, 23 Cl. Ct. 606, 614-15 (1991) (quoting Pure Gold, Inc. v. Syntex, (U.S.A.) Inc., 739 F.2d 624, 626 (Fed. Cir. 1984)), vacated on other grounds, 970 F.2d 890 (Fed. Cir. 1992) (citation omitted); see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 806 (Fed. Cir. 1999) ("The purpose of summary judgment is not to deprive a litigant of a trial, but to avoid an unnecessary trial when only one outcome can ensue."); Metric Constr. Co., Inc. v. United States, 73 Fed. Cl. 611, 612 (2006).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; see also Long Island Sav. Bank, FSB v. United States, 503 F.3d 1234, 1244 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 555 U.S. 812 (2008); Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001), cert. denied, 534 U.S. 1109 (2002); Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1353 (Fed. Cir. 1999); TigerSwan, Inc. v. United States, 118 Fed. Cl. at 451; Stephan v. United States, 117 Fed. Cl. 68, 70 (2014); Gonzales-McCaulley Inv. Group, Inc. v. United States, 101 Fed. Cl. 623, 629 (2011). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. See Ricci v.

DeStefano, 557 U.S. 557, 586 (2009); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Yant v. United States, 588 F.3d 1369, 1371 (Fed. Cir. 2009), cert. denied, 131 S. Ct. 69 (2010); Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co., 272 F.3d 1365, 1369 (Fed. Cir. 2001), reh'g and reh'g en banc denied, 293 F.3d 1364 (Fed. Cir. 2002), cert. denied, 539 U.S. 957 (2003); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d at 1257; Wanlass v. Fedders Corp., 145 F.3d 1461, 1463 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1998); see also Am. Pelagic Co. v. United States, 379 F.3d at 1371 (citing Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1345-46 (Fed. Cir. 2000)); Dana R. Hodges Trust v. United States, 111 Fed. Cl. at 455; Boensel v. United States, 99 Fed. Cl. at 611 ("'The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 255) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Casitas Mun. Water Dist. v. United States, 543 F.3d at 1283; Lathan Co. Inc. v. United States, 20 Cl. Ct. 122, 125 (1990))); see also Am. Seating Co. v. USSC Grp., Inc., 514 F.3d at 1266-67; Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807. "However, once a moving party satisfies its initial burden, mere allegations of a genuine issue of material fact without supporting evidence will not prevent entry of summary judgment." Republic Sav. Bank, F.S.B. v. United States, 584 F.3d 1369, 1374 (Fed. Cir. 2009); see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48.

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see also Riley & Ephriam Constr. Co. v. United States, 408 F.3d 1369, 1371 (Fed. Cir. 2005); Crown Operations Int'l Ltd. v. Solutia Inc., 289 F.3d 1367, 1377 (Fed. Cir.), reh'g denied (Fed. Cir. 2002); Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc., 109 F.3d 739, 741 (Fed. Cir.) (quoting Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994), reh'g denied and en banc suggestion declined (Fed. Cir. 1995)), reh'g denied and en banc suggestion declined (Fed. Cir. 1997); Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1569 (Fed. Cir. 1997); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807; RQ Squared, LLC v. United States, No. 12-527C, 2015 WL 170230, at *6 (Fed. Cl. Jan. 14, 2015). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. at 322; see also Wavetronix LLC v. EIS Elec. Integrated Sys., 573 F.3d 1343, 1354 (Fed. Cir. 2009); Long Island Sav. Bank, FSB v. United States, 503 F.3d at 1244; Florida Power & Light Co. v. United States, 375 F.3d 1119, 1124 (Fed. Cir. 2004); Schoell v. Regal Marine Indus., Inc., 247 F.3d 1202, 1207 (Fed. Cir. 2001); Am. Airlines, Inc. v. United States, 204 F.3d 1103, 1108 (Fed. Cir. 2000); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d at 807; Rasmuson v. United States, 109 Fed. Cl. 267, 271 (2013). However, "a non-movant is required to provide opposing evidence under Rule 56(e) only if the moving party has provided evidence sufficient, if unopposed, to prevail

as a matter of law." Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1369 (Fed. Cir. 2006).

Defendant argues it is entitled to partial summary judgment on plaintiffs' breach of contract claims because there is no evidence that the alleged rental agreements between the government and plaintiffs provided plaintiffs with the rights and guarantees they allege. Defendant asserts that the plain language of plaintiffs' alleged rental agreement, documents with the Forest Service is clear and unambiguous and does not provide the rights and guarantees plaintiffs allege. Thus, according to defendant, the January 15, 2008 Los Padres National Forest Quarters Policy cannot be the basis for the breach of contract claims. The eight Los Prietos plaintiffs who responded to defendant's motion for partial summary judgment include Nathan Allen, John Brack, Justin Moya, Gregory Ofner, Arthur Wesley Preston, Bradley Christensen, Brian Sexton, and Nicholas Riley. Six plaintiffs' responses, excluding those of Mr. Sexton and Mr. Brack, argue, almost verbatim, that the documents' terms, and provisions in the 1988 Los Prietos Rules, as well as the omission of a length of stay provision, led each of them to believe that "as long as he is an employee in good standing and abides by the Rules and Regulations, he may continue to lease a space in the trailer park with the ability to resell his trailer upon the same terms." Plaintiffs Nathan Allen, Nicholas Riley, Bradley Christensen, and Justin Moya, therefore, claim that they believe they could sell their mobile home upon the same terms they enjoyed and that subsequent owner employees also would be able to enjoy the ability to lease the mobile home pad as long as they continued to be employed by the Forest Service at their Forest Service location, and abided by the applicable rules and regulations. Plaintiffs suggest that the more than 45 year practice by the Forest Service of allowing employees to lease for the length of their employment and to sell their mobile homes to other Forest Service employees under similar conditions created an expectation that plaintiffs and their successors would continue to enjoy the same rights. In addition, certain plaintiffs, Brian Sexton, Bradley Christensen, Justin Moya, Gregory Ofner, John Brack, and Arthur Wesley Preston, argue that their expectation as to how long they would be allowed to continue to rent their mobile home pads was based on discussions with individual Forest Service District Rangers.

It is well settled that "[t]o recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir.), reh'g denied (Fed. Cir. 1989); see also Barlow & Haun, Inc. v. United States, 118 Fed. Cl. 597, 620 (2014). A breach of contract claim requires: "(1) an obligation or duty arising out of the contract and (2) factual allegations sufficient to support the conclusion that there has been a breach of the identified contractual duty." Bell/Heery v. United States, 739 F.3d 1324, 1331 (Fed. Cir.) (citing Hercules, Inc. v. United States, 24 F.3d 188, 198 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1994), aff'd, 516 U.S. 1049 (1996)), reh'g and reh'g en banc denied (Fed. Cir. 2014). "Whether a contract creates a duty is a legal question of contract interpretation . . . ." San Carlos Irr. &

Drainage Dist. v. United States, 877 F.2d at 959; see also Mata v. United States, 114 Fed. Cl. at 745.

Contract interpretation is a question of law, which poses an appropriate question for summary judgment resolution. See First Annapolis Bancorp, Inc. v. United States, 644 F.3d 1367, 1373 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2011), cert. denied, 132 S. Ct. 2102 (2012); H.B. Mac, Inc. v. United States, 153 F.3d 1338, 1345 (Fed. Cir. 1998) (stating that matters of contract interpretation are questions of law); see also Holland v. United States, 621 F.3d 1366, 1374 (Fed. Cir. 2010), reh'g and reh'g en banc denied (Fed. Cir.), cert. denied, 132 S. Ct. 365 (2011); Dalton v. Cessna Aircraft Co., 98 F.3d 1298, 1305 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1996); C.W. Over & Sons, Inc. v. United States, 54 Fed. Cl. 514, 520 (2002).

Contract interpretation starts with analysis of the language of the written agreement. See Bell/Heery v. United States, 739 F.3d at 1331; Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 824 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 131 S. Ct. 997 (2011); LAI Servs., Inc. v. Gates, 573 F.3d 1306, 1314 (Fed. Cir.), reh'g denied (Fed. Cir. 2009); Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1375 (Fed. Cir. 2004); Cheaves v. United States, 108 Fed. Cl. 406, 409 (2013); Sterling, Winchester & Long, L.L.C. v. United States, 83 Fed. Cl. 179, 183 (2008), aff'd, 326 F. App'x 568 (Fed. Cir. 2009). The United States Court of Appeals for the Federal Circuit stated in Jowett, Inc. v. United States:

> In interpreting a contract, "[w]e begin with the plain language." "We give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning." In addition, "[w]e must interpret the contract in a manner that gives meaning to all of its provisions and makes sense."

Jowett, Inc. v. United States, 234 F.3d 1365, 1368 (Fed. Cir. 2000) (quoting McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1996), and Harris v. Dep't of Veterans Affairs, 142 F.3d 1463, 1467 (Fed. Cir. 1998)); Mata v. United States, 114 Fed. Cl. at 745 ("The plain language of the contract will be viewed as controlling if it is unambiguous on its face."); see also McHugh v. DLT Solutions, Inc., 618 F.3d 1375, 1380 (Fed. Cir. 2010); Giove v. Dep't of Transp., 230 F.3d 1333, 1340-41 (Fed. Cir. 2000) ("In addition, we must interpret the contract in a manner that gives meaning to all of its provisions and makes sense. Further, business contracts must be construed with business sense, as they naturally would be understood by intelligent men of affairs.") (citations omitted); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991) (indicating that a preferable interpretation of a contract is one that gives meaning to all parts of the contract, rather than one that leaves a portion of the contract "useless, inexplicable, void, or superfluous."); Hol-Gar Mfg. Corp. v. United States, 169 Ct. Cl. 384, 388, 351 F.2d 972, 975 (1965) (The language of the "contract must be given that meaning that would be derived from the contract by a reasonable intelligent person acquainted with the contemporaneous circumstances."); Dobyns v. United States, 118 Fed. Cl. 289, 313

(2014) ("[A] contract must also be construed as a whole and 'in a manner that gives meaning to all of its provisions and makes sense.'" (quoting McAbee Constr., Inc. v. United States, 97 F.3d at 1435)); Marquardt Co. v. United States, 101 Fed. Cl. 265, 268 (2011) ("In interpreting contractual language, the court must give reasonable meaning to all parts of the contract and avoid rendering portions of the contract meaningless.") (citation omitted); Enron Fed. Solutions, Inc. v. United States, 80 Fed. Cl. 382, 393 (2008) ("[C]ontext defines a contract and the issues deriving thereof."). "'"In contract interpretation, the plain and unambiguous meaning of a written agreement controls." The contract must be construed to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract.'" Arko Exec. Servs., Inc. v. United States, 553 F.3d at 1379 (quoting Hercules Inc. v. United States, 292 F.3d 1378, 1380-81 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002) (quoting Craft Mach. Works, Inc. v. United States, 926 F.2d 1110, 1113 (Fed. Cir. 1991))); see also Gardiner, Kamya & Assocs., P.C. v. Jackson, 467 F.3d 1348, 1353 (Fed. Cir. 2006); Medlin Constr. Grp., Ltd. v. Harvey, 449 F.3d 1195, 1200 (Fed. Cir. 2006); Hunt Constr. Grp., Inc. v. United States, 281 F.3d 1369, 1372 (Fed. Cir. 2002) ("We begin with the plain language when interpreting a contract . . . . The contract must be considered as a whole and interpreted to effectuate its spirit and purpose, giving reasonable meaning to all parts.") (citations omitted); LAI Servs., Inc. v. Gates, 573 F.3d at 1314. The Federal Circuit also has indicated that "a proper technique of contract interpretation is for the court to place itself into the shoes of a reasonable and prudent contractor and decide how such a contractor would act in interpreting the contract." H.B. Mac, Inc. v. United States, 153 F.3d at 1345.

When the terms of a contract are clear and unambiguous, there is no need to resort to extrinsic evidence for its interpretation. See TEG-Paradigm Envtl., Inc. v. United States, 465 F.3d 1329, 1338 (Fed. Cir. 2006) ("When the contract's language is unambiguous it must be given its 'plain and ordinary' meaning and the court may not look to extrinsic evidence to interpret its provisions." (quoting Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003))); see also Precision Pine & Timber, Inc. v. United States, 596 F.3d at 824; Barron Bancshares, Inc. v. United States, 366 F.3d at 1375 ("If the terms of a contract are clear and unambiguous, they must be given their plain meaning – extrinsic evidence is inadmissible to interpret them."); King v. Dep't of Navy, 130 F.3d 1031, 1033 (Fed. Cir. 1997) ("If ambiguity is found, or if ambiguity has arisen during performance of the agreement, the judicial role is to implement the intent of the parties at the time the agreement was made."); Sea-Land Serv., Inc. v. United States, 213 Ct. Cl. 555, 567, 553 F.2d 651, 658 (1977), cert. denied, 434 U.S. 1012 (1978); Sterling, Winchester & Long, L.L.C. v. United States, 83 Fed. Cl. at 183 ("If the contract is clear and unambiguous on its face, the plain and ordinary meaning of the contract controls, and the Court may not resort to extrinsic evidence to interpret it or change the terms of the contract." (citing Coast Fed. Bank, FSB v. United States, 323 F.3d at 1040).

"Generally, the plain language of a contract controls; however, language that is reasonably susceptible to more than one interpretation, where 'each [interpretation] . . . is found to be consistent with the contract language,' may be considered ambiguous." Marquardt Co. v. United States, 101 Fed. Cl. at 268 (quoting Cmty. Heating & Plumbing

Co. v. Kelso, 987 F.2d 1575, 1579 (Fed. Cir. 1993)); see also Metric Constructors, Inc. v. NASA, 169 F.3d 747, 751 (Fed. Cir. 1999) ("When a contract is susceptible to more than one reasonable interpretation, it contains an ambiguity."). The United States Court of Appeals for the Federal Circuit has stated that, "[t]o show an ambiguity [in contract language,] it is not enough that the parties differ in their respective interpretations of a contract term." NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004). In order to demonstrate ambiguity, the interpretations offered by both parties "must fall within a 'zone of reasonableness.'" Id. (quoting Metric Constructors, Inc. v. NASA, 169 F.3d at 751).

It has been "'a fundamental precept of common law that the intention of the parties to a contract controls its interpretation.'" Tri-Star Elecs. Int'l, Inc. v. Preci-Dip Durtal SA, 619 F.3d 1364, 1367 (Fed. Cir. 2010) (quoting Beta Sys., Inc. v. United States, 838 F.2d 1179, 1185 (Fed. Cir. 1988) (quoting Firestone Tire & Rubber Co. v. United States, 195 Ct. Cl. 21, 30, 444 F.2d 547, 551 (Ct. Cl. 1971))); Alvin, Ltd. v. United States Postal Serv., 816 F.2d 1562, 1565 (Fed. Cir. 1987) ("In the case of contracts, the avowed purpose and primary function of the court is the ascertainment of the intent of the parties."); see also Flexfab, LLC v. United States, 424 F.3d 1254, 1262 (Fed. Cir. 2005) ("[I]ntent is determined by looking to the contract and, if necessary, other objective evidence. In the absence of clear guidance from the contract language, the requisite intent on the part of the government can be inferred from the actions of the contracting officer . . . .").

Because an ambiguous or uncertain writing sometimes only can be understood upon consideration of the surrounding circumstances, courts may rely on extrinsic evidence to interpret an ambiguous contract clause. See Cruz-Martinez v. Dep't of Homeland Sec., 410 F.3d 1366, 1371 (Fed. Cir. 2005) ("'[M]eaning can almost never be plain except in a context.'" (quoting Restatement (Second) of Contracts § 212, cmt. b (1981))); Barron Bancshares, Inc. v. United States, 366 F.3d at 1375 (holding that extrinsic evidence is permissible to interpret an ambiguous contract); Sylvania Elec. Prods., Inc. v. United States, 198 Ct. Cl. 106, 126, 458 F.2d 994, 1005 (1972); Mata v. United States, 114 Fed. Cl. at 746 ("If a contract is ambiguous, the court may rely on extrinsic evidence to discern the parties' intent."); Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 662 (2003). There are limitations, however, on the use of extrinsic evidence. Extrinsic evidence "may not be used 'to justify reading a term into an agreement that is not found there.'" Warren v. Office of Pers. Mgmt., 407 F.3d 1309, 1314 (Fed. Cir. 2005) (quoting Fox v. Office of Pers. Mgmt., 100 F.3d 141, 145 (Fed. Cir. 1996)); see also Holland v. United States, 621 F.3d at 1378. "Only in the event of an ambiguity may [the court] examine extrinsic or parol evidence." Bell BCI Co. v. United States, 570 F.3d 1337, 1341 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2009); McAbee Constr., Inc. v. United States, 97 F.3d at 1434 ("[E]xtrinsic evidence . . . should not be used to introduce an ambiguity where none exists." (quoting Interwest Constr. v. Brown, 29 F.3d 611, 615 (Fed. Cir. 1994)); K-Con Bldg. Sys., Inc. v. United States, 107 Fed. Cl. 571, 600 (2012). "The parol evidence rule provides a further limitation on the use of extrinsic evidence in interpreting contracts. Under the parol evidence rule, extrinsic evidence pre-dating a written agreement may not be used 'to

add to or otherwise modify the terms of a written agreement in instances where the written agreement has been adopted by the parties as an expression of their final understanding.'" TEG-Paradigm Envtl., Inc. v. United States, 465 F.3d at 1338-39 (quoting Barron Bancshares, Inc. v. United States, 366 F.3d at 1375). The court, therefore, first must ascertain whether the language at issue was ambiguous. See NVT Techs., Inc. v. United States, 54 Fed. Cl. 330, 335 (2002) (finding that the threshold question is whether the document in question contains ambiguous language), aff'd, 370 F.3d 1153 (Fed. Cir. 2004); Bell BCI Co. v. United States, 570 F.3d at 1341.

If the court finds the contract language is ambiguous, it must weigh extrinsic evidence to determine the parties' intent, and, therefore, the matter is inappropriate to resolve on summary judgment. See Beta Sys., Inc. v. United States, 838 F.2d at 1183 ("To the extent that the contract terms are ambiguous, requiring weighing of external evidence, the matter is not amenable to summary resolution."); see also Mata v. United States, 114 Fed. Cl. at 746; Marquardt Co. v. United States, 101 Fed. Cl. at 268; Tecom, Inc. v. United States, 66 Fed. Cl. 736, 743 (2005) (When a contract is "ambiguous, necessitating a review of extrinsic evidence to determine the parties' intent," summary judgment is not appropriate "if material facts are genuinely in dispute.").

Plaintiffs allege that the Forest Service's announcement of the January 15, 2008 Los Padres National Forest Quarters Policy and new rental documents and agreements breached plaintiffs' existing "leases and/or contractual relationships" with the Forest Service. In their complaint, plaintiffs contend that the terms of their "leases and/or contractual relationships" with the Forest Service gave them the right to occupy their leased mobile home pad as long as they remained employed by the Forest Service, and also extended these rights to any Forest Service employee who purchased their mobile homes. Plaintiffs argue:

> At various times prior to January of 2008, the FOREST SERVICE entered into leases and/or contractual relationships with Plaintiffs and/or their predecessors in interest for mobile home pads under which Plaintiffs were given the right to place mobile homes upon such pads and occupy them for an indefinite period of time so long as they remained employed by the FOREST SERVICE at or near the location of the pads and agreed to certain terms and conditions, including periodic rent increases. Plaintiffs or their predecessors in interest were permitted to sell the mobile homes on the pads, provided that they sold them to other FOREST SERVICE employees. Those employees, in turn would have the same rights of occupancy and sale as the Plaintiffs.

(capitalization in original and internal citation omitted).[16] Therefore, plaintiffs argue that the January 15, 2008 Los Padres National Forest Quarters Policy breached their

---

[16] Plaintiffs' complaint does not specify the documents upon which plaintiffs base their breach of contract claims, nor the documents they claim constitute their "leases and/or

existing "leases and contractual relationships" because, as alleged in plaintiffs' complaint, the Transition Plan in the 2008 Los Padres National Forest Quarters Policy restricts plaintiffs' occupation of "their mobile homes on the pads for a maximum of seven (7) years, with the possibility of a one (1) year extension" in the discretion of the Forest Service, and based solely on the best interest of the government, after which plaintiffs either could remove the mobile home from the mobile home pad or sell the mobile home to another Forest Service employee. Plaintiffs also contend that the January 15, 2008 Los Padres National Forest Quarters Policy breaches plaintiffs' existing leases and contractual relationships because it limits the right of the purchaser of a mobile home to occupy the mobile home pad to no more than five years, after which the mobile homes would have to be removed. Moreover, in a number of the plaintiffs' responses to defendant's motion for partial summary judgment, certain plaintiffs argue, almost verbatim, that the January 15, 2008 Los Padres National Forest Quarters Policy breached existing "leases and/or contractual relationships" because:

> The 1988 policy [1988 Los Prietos Rules] gives Plaintiff the ability to sell his mobile home to another employee at a price that the buyer and seller agree upon. Under the 2008 policy [January 15, 2008 Los Padres National Forest Quarters Policy], Plaintiff can still sell his mobile home at a price agreed upon by the buyer and seller. However, Plaintiff must now also disclose to the buyer that they will not be able to resell the trailer without first removing it from the property and restoring the property to pre-occupancy condition.

---

contractual relationships." The documents in the record before the court, as well as those referenced in the Joint Stipulation of Facts, include complete sets of Forest Service Standard Rent Documents for Nathan Allen, Daniel Fawcett, Gregory Ofner, Arthur Wesley Preston, and Nicholas Riley, the partial sets of Forest Service Standard Rent Documents for John Brack, Justin Moya, and Gregory Ofner, as well as the 1988 Los Prietos Rules. The documents received and signed by Los Prietos plaintiff Bradley Christensen may not have included the 1988 Los Prietos Rules. Mr. Christensen indicated he was unsure if he signed the 1988 Los Prietos Rules, but otherwise his documents in the record are comprised of a complete set of the Forest Service Standard Rent Documents. The documents received and signed by Los Prietos plaintiff Brian Sexton are the complete set of Forest Service Standard Rent Documents, the 1988 Los Prietos Rules, and the June 2000 Los Padres Rental Contract. The documents signed by the Monterey plaintiff Casey Allen are from a complete set of the Forest Service Standard Rent Documents. For Monterey plaintiff Ryan Webster, there is a partial set and a complete set of the Forest Service Standard Rent Documents, which includes signed copies of the Tenant Rent Notice and the General Terms and Conditions, in the record. The documents received and signed by the Ojai plaintiff Carrie Landon are from partial sets of the Forest Service Standard Rent Documents. The Ojai plaintiff, Ms. Landon, also was subject to the Ojai Housing Policies, although she indicated at her deposition that she does not recall receiving or signing a copy of those policies.

According to plaintiffs, they were "required to execute new rental agreements or be subject to eviction from the pads and required to remove their trailer homes therefrom." Plaintiffs claim that after the announcement of the January 15, 2008 Los Padres National Forest Quarters Policy, they suffered "severe financial losses, including the diminution in the market value of their mobile home and/or inability to sell their mobile homes, and/or prospective severe financial losses related to removal of their mobile homes," because of the provisions contained in the January 15, 2008 Los Padres National Forest Quarters Policy regarding limits on length of stay and requirements to remove the mobile home from the mobile home pad. Plaintiffs Nathan Allen, John Brack, Arthur Wesley Preston, and Daniel Fawcett specifically claim that as a direct result of the January 15, 2008 Los Padres National Forest Quarters Policy, they were forced to sell their mobile homes at a significantly reduced rate, and, consequently, suffered great financial loss. Plaintiff Brian Sexton states: "I was not guaranteed nor am I seeking to make a profit off the government." Mr. Sexton indicates that his "intention of selling my mobile home when the time came was to ask fair market value without the knowledge that the Forest Service was re-writing the housing policy." Plaintiffs Nathan Allen, John Brack, Arthur Wesley Preston, and Daniel Fawcett all note that they had made various improvements to their mobile homes, for which they allege they could not recoup the value. Plaintiff Bradley Christensen indicates he made various improvements to the property with the intention that, "at the time of sale, my property should at least hold its value of what I purchased it for, if not more for the improvements."

Defendant argues in its motion for partial summary judgment that plaintiffs' alleged rental agreement, documents do not provide plaintiffs with any basis for a breach of contract claim because the contracts are "clear and unambiguous" as to plaintiffs' rights and the rights of plaintiffs' successors with respect to length of stay, and do not provide for the rights or guarantees plaintiffs allege as the basis for their claim. According to defendant, "plaintiffs' rental agreements are plain on their face – they do not provide for a guaranteed mobile home pad for the entirety of their employment and they do not guarantee that any subsequent employee who purchases a mobile home from any one of them will have any particular rental rights." Defendant states that the alleged rental agreement, documents

do not provide that subsequent renters of mobile home pads in Los Padres will be able to rent in the forest for as long as they are employed with the Forest Service. The Forest Service never guaranteed that plaintiffs could remain on their mobile home pads for the duration of their employment with the Forest Service at Los Padres, the Forest Service never guaranteed that plaintiffs would sell their mobile homes for any particular amount, or that any Forest Service employee who might buy their mobile home would have any particular rights when he moved into the mobile home.

Defendant further states:

> There is no evidence that the rental agreements between the Government and plaintiffs provides that Forest Service employees who purchased plaintiffs' mobile homes would have any particular rights relating to the rental of a mobile home pad in Los Padres. Or that the Government guaranteed that Forest Service employees who purchased plaintiffs' mobile homes would be permitted to rent in the forest for as long as they were employed by the Forest Service.

According to defendant, each plaintiff is "essentially asking the Court to read into his [or her] rental agreements obligations that the Government must fulfill with future Forest Service employees who may rent forest mobile home pads" and "[s]uch a request has no support in the rental documents or the law."

For all twelve of the remaining plaintiffs, regardless of the area of the Los Padres National Forest in which their mobile home pads were located, the record contains at least one partial set of the Forest Service Standard Rent Documents, which, at a minimum, contained the Tenant Rent Notice,[17] the Quarters Assignment Agreement, and a copy of the General Terms and Conditions signed by plaintiff. The Forest Service Standard Rent Documents establish the terms of plaintiffs' rental, including the monthly rent, the terms under which plaintiffs are to remove their trailer from the mobile home pad upon termination of their employment with the Forest Service and the conditions under which plaintiffs can be evicted. Regardless of the differences on which pages of the Forest Service Standard Rent Documents the plaintiffs signed, the plain language of these rental, agreement documents does not include and does not give rise to the rights, guarantees, obligations, or duties alleged in plaintiffs' complaint. The Rent Computation Schedules, Government Quarters Inventory, and Tenant Rent Notice do not contain provisions that give rise to the rights or guarantees alleged by plaintiffs. Regarding the unlimited length of stays subject to remaining employed by the Forest Service, to which the plaintiffs allege they are entitled, the plain language of the Quarters Assignment Agreement and the General Terms and Conditions expressly limited the rights of plaintiffs to occupy the mobile home pads.

The Quarters Assignment Agreement provided, in relevant part: "If occupant is an Agency/Bureau employee, occupancy shall end upon expiration of occupant's employment at this location, unless previously terminated at the option of either party upon 90 days written notice." (emphasis in original). The Quarters Assignment Agreement provided that either party may terminate the agreement with 90-days written notice and did not specify that either party must give a particular reason for termination.

---

[17] Eleven of the twelve remaining plaintiffs signed the Tenant Rent Notice. Although the record contains a complete, seven page set of the Forest Service Standard Rent Documents for Mr. Riley, including the Tenant Rent Notice, he only signed the final page of the set titled General Terms and Conditions, but did not sign the Tenant Rent Notice.

The Quarters Assignment Agreement did not provide a place for tenant's signature. The record reflects, however, at least one partial or complete set of Forest Service Standard Rent Documents for each plaintiff, which contained the Quarters Assignment Agreement, and on which each of the plaintiffs signed and dated the page titled General Terms and Conditions, immediately following the page titled Quarters Assignment Agreement. The General Terms and Conditions provided, in relevant part:

> 1. Occupant may be evicted by the Agency/Bureau for: (1) breach of this Agreement; (2) refusal to sign this or subsequent Quarters Assignment Agreements; (3) termination of this agreement; or (4) for being a serious threat to the public health or welfare.

> 2. The premises shall be used for residence purposes only. It shall not be assigned or sublet by occupant in whole or in part, nor shall any business be conducted on the premises unless authorized in writing by the Agency/Bureau head or his/her designated representative.

The Forest Service Standard Rent Documents in the record for each plaintiff establish that the Forest Service was not obligated to allow plaintiffs to place mobile homes upon the pads and occupy them for an indefinite period or for as long as an individual remained employed by the Forest Service at or near the location of the pads. Nor do the Forest Service Standard Rent Documents reflect that the plaintiffs would be able to sell the mobile home for a particular price, or that the Forest Service employees to which a plaintiff eventually sold his or her mobile home would have the same rights of occupancy and sale as the earlier owner.

The plain language of the 1988 Los Prietos Rules also does not provide the rights or obligations to which plaintiffs allege entitlement. The 1988 Los Prietos Rules established the guidelines for occupation of the mobile home pads, including who may rent a mobile home pad and the terms under which plaintiffs would have to remove a trailer from a mobile home pad if an employee is transferred to another forest or district, or employment with the Forest Service is terminated. The 1988 Los Prietos Rules provided, in relevant part:

> 1. The District Ranger will have the final authority on all decisions in the mobile home park.

> 2. The park is to be used by Santa Barbara Ranger District (SBRD) employees with a permanent appointment of 13/13 or greater. Forest employees with full-time tours (or 13/13) will be allowed to live in the park when there is no demand for space by SBRD employees, who will have priority for available space.

> 3. Mobile homes in the park must be owned by the occupant. Renting of mobile homes by employees is prohibited, except when the owner is in the process of selling the home and has approval of the District Ranger.

. . .

16. A resident who has accepted a new job on another Forest or District will remove their trailer and belongings from the trailer park within a reasonable time, reasonable being defined as 90 days. Owner may sell the trailer in place to a SBRD employee or Forest employee, SBRD employee having priority.

17. Any mobile home moved into the park must be approved by the District Ranger.

. . .

22. Boisterous and unreasonably loud noise, disburbing [sic] peace and quiet and willful and careless destruction of or injury to property in any matter on these premises will result in immediate action to the offenders and could result in their eviction from the trailer park.

The 1988 Los Prietos Rules provided that permanent Forest Service employees are permitted to use the park and that owners could sell their trailers in place on their leased pads to a Forest Service employee who purchased the mobile home. The parties jointly stipulated, however, that "[t]he Los Prietos Rules do not provide that Forest Service employees may remain in the mobile home park for as long as they are employees of the Los Padres National Forest," and also "do not guarantee that a Forest Service employee who sells his mobile home when he has been renting a mobile home pad in the Forest Service mobile home park will get a certain market price for the mobile home." The Joint Stipulation of Facts indicates that "plaintiffs never sought such a guarantee." Moreover, the 1988 Los Prietos Rules "do not guarantee that, if a Forest Service employee sells his mobile home, he may reap the value of owner improvements or make a profit on the sale of his mobile home," nor that "the buyer will have the same lease rights that the employee had when he purchased the mobile home."

The June 2000 Los Padres Rental Contract, applicable to plaintiff Brian Sexton, provided, in relevant part:

2.1 The District Ranger has the final authority on all decisions involving quarters.

2.2 TENANT WILL NOT VIOLATE ANY LAW OR ORDINANCE OF THE COUNTY, STATE OR FEDERAL GOVERNMENT. THIS INCLUDES BUT IS NOT LIMITED TO:

a) Boisterous and needless noise, disturbances of peace and quiet, and any activities constituting a nuisance are not allowed. If this is violated, tenant(s) will receive written warning and be given a maximum total of 30

days to permanently cure the problem or face eviction. Evicted tenant will be given 30 days to quit quarters (move out).

b) Willful and careless destruction of government property on the Forest Service compound will result in immediate eviction of the offenders and a charge for damages. Evicted tenant will be given 30 days to quit quarters (move out).

. . .

2.6 HOUSING OCCUPANCY AND SUBLETTING ARE AS FOLLOWS:

a) Only employees with Los Padres National Forest duty station, as stipulated in the policy, with their immediate family and/or significant other (and his/her immediate family), per District Ranger assignment, will be allowed to live in Forest Service quarters. Trailers or mobile homes must only be occupied by authorized individuals. Guests are allowed to stay for up to 30 days. Except for the situation described in 2.6 (b) below, no subletting of residences will be allowed.

b) This sub-item 2.6(b) only applies to tenants who moved in prior to June 2000. **In the case that the tenant remains actively employed by the Los Padres National Forest, but moves out of the trailer,** rent (less utilities) must be paid to the Forest Service even if unoccupied. Rental by the tenant to another permanent Forest Service employee, or temporary Forest Service employee in active status (hereafter called "sublessee"), may occur; however, tenant must pay quarters rent including all utility or other use. Under no circumstances may a tenant make a profit from trailer rent on National Forest System land. In addition, tenant remains fully responsible and liable for conformance to this contract by any sub-lessee. Tenant must give minimum 30 days advance notice to Forest Service of changes in occupancy to allow for paperwork.

c) This sub-item 2.6(c) only applies to tenants who move in on or after June 2000. **In the case that the tenant remains actively employed by the Los Padres National Forest, but moves out of the trailer,** within 90 days following the move the tenant must either sell the trailer to another permanent employee, or remove the trailer off Los Padres National Forest System land. Rent (less utilities) must be paid the Forest Service even if unoccupied. Quarters rent for each 30 day period must be paid in advance; failure to pay in advance will result in eviction of tenant. Should a mobile home not be removed within the allowed time frame, the trailer becomes unauthorized personal property, and is subject to impoundment by the Forest Service per 36 CFR 262.12.

d) **In the case that the tenant retires or is terminated from the Los Padres National Forest,** within 120 days of effective date, the tenant must either sell the trailer to another permanent employee, or remove the trailer/mobile home off Los Padres National Forest System land. Rent (less utilities) must be paid the Forest Service even if unoccupied. Quarters rent for each 30 day period must be paid in advance; failure to pay in advance will result in eviction of tenant. Should a mobile home not be removed within the allowed time frame, the trailer becomes unauthorized personal property, and is subject to impoundment by the Forest Service per 36 CFR 262.12.

e) **In the case of tenant transfer of station (TOS) from the Los Padres National Forest to another Forest Service unit,** within 120 days of effective date, the tenant must either sell the trailer/mobile home to another permanent employee, or remove the trailer/mobile home off Los Padres National Forest System land. Rent (less utilities) must be paid the Forest Service even if unoccupied. Quarters rent will continue to be deducted by the new Forest Service unit. Should a mobile home not be removed within the allowed time frame, the trailer becomes unauthorized personal property, and is subject to impoundment by the Forest Service per 36 CFR 262.12.

f) In case of extreme circumstances such as employee death, the Ranger may allow for limited time extension. Low market demand or values will not qualify for extension.

. . .

**This residence contract is entered into between Brian Sexton and the Forest Service, commencing on 5/20/01 (date) and terminating upon the tenant's sale of trailer/mobile home.**

(capitalization and emphasis in original).

The plain language of the June 2000 Los Padres Rental Contract also does not give rise to the rights or the obligations on the part of the defendant that plaintiffs allege in their complaint. As the parties jointly stipulated, the June 2000 Los Padres Rental Contract does not provide that a Forest Service employee may continue to rent a mobile home pad as long as he or she is a Forest Service employee. Moreover, the terms of the June 2000 Los Padres Rental Contract do not guarantee that the plaintiffs will be able to obtain a particular price for sale of their mobile homes, but contemplates that employees will assume the responsibility for selling their mobile home when required, and does not protect employees from low market demand or lower values than desired or expected. As jointly stipulated to by the parties, although the June 2000 Los Padres Rental Contract "provides that a Forest Service employee may sell his mobile home to

another Forest Service employee," the contract "does not state that the Forest Service employee to whom a mobile home is sold will have the same lease rights as the seller."

Similarly, the Ojai Housing Policies do not provide the rights or guarantees that plaintiffs allege in their complaint. The Ojai Housing Policies provided in relevant part:

> This District will attempt to provide a "swing house" for newly transferred personnel. A time limit will be set and documented, (three to six months) as to the length of their stay. This will give them an opportunity to seek housing in the private sector.
>
> An attempt will be made to maintain barracks space for newly transferred employees while they search for adequate housing.
>
> When an employee occupies government housing and does not like it for whatever reason, he/she will have to compete with other employees for any other available housing, using the guidelines contained herein.
>
> Government Housing will be for permanent full time employees only.
>
> . . .
>
> Employee quarters and, in particular, employee family housing should be sought in the private sector. Where private quarters are inadequate, substandard, or unavailable, the Government may provide quarters for employees or employees and their families. The Government may also require employees to reside at an administrative site to provide public service or protect U.S. property. In this case, the Government provides on-site quarters for the employee and family.
>
> . . .
>
> The District Ranger will decide who gets government housing. A financial statement will be a deciding factor, with the Ranger making a fair decision as he or she always does.

Defendant is correct that "[t]here is nothing in the Ojai Policies that either provides that tenants may rent a mobile home pad for as long as they are employed, or that any employee who purchases from a plaintiff will enjoy the same rights as those identified in the Ojai Policies." The Ojai Housing Policies provide that "Government Housing will be for permanent full time employees only." As jointly stipulated to by the parties, the Ojai Housing Policies "do not provide that Forest Service employees could remain in the mobile home park for as long as they are employees of Los Padres National Forest;" "do not guarantee that a Forest Service employee who sells his mobile home when he has been renting a mobile home pad in the Forest Service mobile home park will get a certain market price or other price for the mobile home;" "do not

33

guarantee that, if a Forest Service employee sells his mobile home, he may recoup the value of owner improvements or make a profit on the sale of his home;" and "do not guarantee that, when a Forest Service employee sells his mobile home, the purchaser of the mobile home will have the same lease rights as the employee had when he purchased the mobile home." Therefore, the plain language of the documents do not give rise to the contractual obligations that plaintiffs allege in their complaint, and plaintiffs do not allege the existence of any other relevant written documents.

In addition to the plain language of the rental documents, plaintiffs concede in the Joint Stipulation of Facts that "[t]he Forest Service did not guarantee that an employee who purchased a mobile home would be subject to the same housing policy as the seller of the mobile home." Moreover, the plaintiffs who were deposed during discovery conceded the same. For example, in Nathan Allen's deposition, he conceded that the 1988 Los Prietos Rules do not provide that a subsequent owner of his mobile home would have the same rental rights he had and admitted that he was never guaranteed that a subsequent owner of his mobile home would be subject to the same or similar rental rules, stating that he had "never been assured anything from the Forest Service." In Bradley Christensen's deposition, he also conceded that the Forest Service Standard Rent Documents do not provide that a subsequent owner of his mobile home would have the same rental rights he had, and, further, that he did not sign any document that provided that a subsequent owner of his mobile home would have any particular rights. Likewise, Justin Moya, Gregory Ofner, and Nicholas Riley all conceded during their depositions that they were never guaranteed that a subsequent owner of their mobile homes would be subject to the same or similar rental rules. Mr. Ofner claimed, however, that it was "common knowledge, general knowledge" that a subsequent owner would have the same rights, but he could not "pinpoint one person" who had provided any specific guarantees or assurances. During Brian Sexton's deposition, he admitted that, to his knowledge, the 1988 Los Prietos Rules never guaranteed the right to stay in the mobile home park as long as he continued as a Forest Service employee, or guaranteed that a subsequent owner of his mobile home would have that right, and also that the June 2000 Los Padres Rental Contract did not specify a time. Carrie Landon similarly conceded during her deposition that, "[a]s far as length of stay, I don't have any documentation of that" and that the language of the Forest Service Standard Rent Documents did not guarantee that the subsequent owner of her mobile home would have the same rental rights as she did.

In addition, the parties jointly stipulated that "[t]he Forest Service did not guarantee to its employees who purchased mobile homes existing on pads in the Los Padres mobile home parks that they would make money on the sale of their mobile homes if they ultimately sold their mobile homes to another Forest Service employee." Many of the plaintiffs conceded the same during their depositions. For example, in Nathan Allen's deposition, he indicated that the Forest Service never guaranteed to him that he would be able to sell his mobile home for a particular price. Bradley Christensen, Daniel Fawcett, Gregory Ofner, Justin Moya, Nicholas Riley, Brian Sexton, and Carrie Landon made similar concessions.

In their responses to defendant's motion for partial summary judgment, a number of plaintiffs challenge when they received the Forest Service Standard Rent Documents, as well as whether they agreed to the relevant provisions regarding the parties' ability to terminate occupancy if plaintiffs did not sign, initial, or acknowledge, and there was no place for them to sign, the specific page titled Quarters Assignment Agreement. For instance, Bradley Christensen argues in his response to the defendant's motion that he did not receive or sign the Forest Service Standard Rent Documents at the time of his purchase, but alleges he received the documents two years after purchase of his mobile home. He contends, "[i]f the Forest Service uses the Quarters Assignment Agreement for their ability to terminate an agreement with the tenant upon 90 days written notice this agreement should have been provided to Plaintiff at the time he made the purchase of his mobile home." Brian Sexton asserts that when he was first assigned his address for the mobile home, "the only documentation that I was given and required to sign was the June 2000 Los Padres Rental Contract," and that, at the time he moved in May 2001, he did not receive any of the other documents. Mr. Sexton indicates that he did not receive the 1988 Los Prietos Rules until November 2002 and the Forest Service Standard Rent Documents until February 2003. Therefore, Mr. Sexton alleges that the "Forest Service was negligent by not providing the required documentation at the appropriate time for signing," and "[h]ad I been presented with the proper documentation when I moved my current home into the Los Prietos Mobile Home Park, I would not have been granted my loan for mortgage." Mr. Sexton argues, that because the Forest Service did not initially provide him the Forest Service Standard Rent Documents, including the Quarters Assignment Agreement, the June 2000 Los Padres Rental Contract "acts as a standalone document," and, unlike the Quarters Assignment Agreement, the June 2000 Los Padres Rental Contract makes no mention of the ability to terminate the contract upon 90 days written notice, and does not reference the Quarters Assignment Agreement. According to Mr. Sexton, the June 2000 Los Padres Rental Contract is "unambiguous" in stating that it is "terminating upon the tenant's sale of trailer/mobile home."

It appears that for plaintiffs John Brack, Daniel Fawcett, Gregory Ofner, Arthur Wesley Preston, Bradley Christensen, Casey Allen, and Ryan Webster, the earliest signed page in the record of the Forest Service Standard Rent Documents, the Tenant Rent Notice or the General Terms and Conditions, is dated after the purchase of their mobile homes. The parties, at the time each represented by counsel, however, also agreed in the Joint Stipulation of Facts, that Forest Service employees would receive a set of these documents, including a Tenant Rent Notice, Quarters Assignment Agreement, and the General Terms and Conditions, at or around the time when employees moved into the mobile home park. The Joint Stipulation of Facts, quoting from the Quarters Assignment Agreement, states:

> At or around the time when employees moved into the mobile home parks, they received documents that calculated their monthly rent. These documents included a Tenant Rent Notice that calculated the monthly rent for the mobile home pad. The documents also included a Quarters

Assignment Agreement which "assigns to the above named occupant, Government quarters described above."

Further quoting from the Quarters Assignment Agreement, the Joint Stipulation of Facts provides that the Quarters Assignment Agreement also included the following language: "Occupancy of the subject quarters shall begin on [date for each tenant]. If occupant is an Agency/Bureau employee, occupancy shall end upon expiration of occupant's employment at this location, unless previously terminated at the option of either party upon 90 days written notice." (alteration and emphasis in original).

As described above, in its motion for partial summary judgment, defendant includes a Declaration from Judy Reynolds, who at the time of signing had been employed by the Forest Service as a Property Management Officer for fifteen years and whose duties included "preparing a yearly Rent Computation Schedule for each employee who rents a mobile home pad in the forest." She indicated that "[e]ach tenant receives a seven-page Rent Computation Schedule each year that he rents a mobile home pad in Los Padres" that includes the Rent Computation Schedules, Government Quarters Inventory, Tenant Rent Notice, Quarters Assignment Agreement, and the General Terms and Conditions. From a review of the Forest Service Standard Rent Documents in the record before the court, although the documents provide an "Effective Date" when occupancy will begin, they do not set a specific termination date. The Appendix to the Joint Stipulation of Facts reflects that, although none of the plaintiffs signed the specific page titled Quarters Assignment Agreement, for each of the plaintiffs the record includes at least one partial or complete set of Forest Service Standard Rent Documents which contained the Quarters Assignment Agreement and in which he or she signed the page immediately following the Quarters Assignment Agreement titled, General Terms and Conditions, prior to the release of the January 15, 2008 Los Padres National Forest Quarters Policy. Specific to Bradley Christensen, he indicated at his deposition that he had received other similar documents before purchasing his home, although there are no earlier complete copies of the Forest Service Standard Rent Documents in the record for him. The record does contain a complete set of the Forest Service Standard Rent documents for Mr. Christiansen on which he signed the Tenant Rent Notice and the General Terms and Conditions on March 14, 2007. Specific to Brian Sexton, the record reflects he received the Forest Service Standard Rent Documents and signed the Tenant Rent Notice and the General Terms and Conditions in February 2003, prior to purchasing his new home in 2004. Therefore, the terms of the Forest Service Standard Rent Documents became part of the plaintiffs' alleged rental agreement, documents and governed plaintiffs' rental of the mobile home pad before the Forest Service's announcement of the new Los Padres National Forest Quarters Policy on January 15, 2008.

"[W]here a party to an agreement signs or otherwise manifests assent to a writing and has reason to believe that like writings are regularly used to embody terms of agreements of the same type, he adopts the writing as an integrated agreement with respect to the terms included in the writing." Restatement (Second) of Contracts § 211(1) (1981); see also Fortec Constructors v. United States, 760 F.2d 1288, 1292

(Fed. Cir. 1985) ("This court must be guided by the well accepted and basic principle that an interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless." (citing United States v. Johnson Controls, Inc., 713 F.2d 1541, 1555 (Fed. Cir. 1983))). Plaintiffs' assertions regarding a contractual right to an indefinite length of stay for as long as they remain employed on site, is inconsistent with the terms of the Quarters Assignment Agreement in the Forest Service Standard Rent Documents, which provides the parties with the option to terminate the agreement at any time upon 90 days written notice.

Plaintiffs also allege that past practices of the Forest Service provides a basis for plaintiffs' breach of contract claim. In the filings of those plaintiffs who responded to defendant's motion for partial summary judgment, each, with the exception of John Brack, states, almost verbatim, that "[f]or 46 years the forest service managed the trailer park with the past practice of allowing employees to lease for the length of employment and to sell their mobile home while attached to forest service land without issue." Moreover, plaintiff Nathan Allen argues that

> where the contract is silent, a past practice, recognized as such and implemented over a long period of time by the parties, becomes an implied condition of the contract. Therefore the past practice of allowing employees to lease for the length of employment and to sell their mobile home while attached to forest land without issue, was an implied condition of the contract since it was consistent, frequent and long-standing.

Defendant, citing McAbee Construction Inc. v. United States, 97 F.3d at 1435, responds that the court cannot resort to evidence of past practices and word-of-mouth when the contract is unambiguous. Moreover, defendant asserts that facts outside the contract language do not and cannot establish an intention on the part of the Forest Service to afford rights or guarantees to plaintiffs or their pad successors related to the length of stay. Defendant argues that any plaintiffs' "understanding about the length of time any purchaser of his mobile home may have been permitted to rent in the forest based upon information outside of the agreement that he signed, does not obligate the Government."

As included in the Appendix to the Joint Stipulation of Facts, two Los Padres National Forest documents, dated after the January 15, 2008 announcement of the new Los Padres National Forest Quarters Policy, recognize that extended stays had occurred in the past. A Los Padres National Forest document, dated February 8, 2008 regarding the employee quarters policy provided that "[u]nder past policies, some employees were able to occupy the same quarters for several years, and in some cases over their entire career." In another Los Padres National Forest document, dated June 2, 2008, the Forest Service made the general statement that "[i]n the past, employees sold their private property from one employee to another." The same June 2, 2008 Los Padres National Forest document stated, however, that "[t]he Forest's new quarters policy places limitations on the length of time employees can occupy government housing, and generally ends the practice that government quarters is occupied by a

single tenant for the entire length of their career."[18] Although acknowledging that some employees had been allowed to remain for the length of their careers, these policy statements cannot alter the terms of the specific documents and agreements entered into by the plaintiffs.

In addition, a number of plaintiffs claim that a Forest Service District Ranger had indicated to that plaintiff at the time of the purchase of their mobile home that they would be able to stay on their mobile home pad as long as they continued to be employed by the Forest Service in the same location. Plaintiffs Gregory Ofner, Justin Moya, and Bradley Christensen, argue, again, almost verbatim, that they met with District Ranger Linda Riddle at the time of purchasing their home, who, they allege, informed each of them that "as long as he was employed by the Forest Service, worked on the Santa Barbara Ranger District and abided by the Los Prietos Mobile Home Park Rules and Regulations Policy July 1988, he was allowed to stay in the mobile home park" as a tenant. Brian Sexton takes the same position and indicates that District Ranger Riddle informed him that, provided plaintiff abided by both the 1988 Los Prietos Rules and the June 2000 Los Padres Rental Contract, he would be allowed to stay. Mr. Sexton also indicates that in May 2004, he notified District Ranger Riddle he wanted to replace his mobile home with a new one. During that process, he "was asked by Iris Swisher [a loan officer] if I could stay if I could stay [sic] in the Mobile Home Park for the life of the 15 year Mortgage," and that "Iris Swisher called Ranger Riddle to confirm this." Mr. Sexton indicates he asked District Ranger Riddle "if this was possible, and she confirmed this, providing I didn't get fired or break any park rules." According to Mr. Sexton, his ability to stay on the pad in his mobile home was a condition of his loan. Mr. Sexton also argues that the June 2000 Los Padres Rental Contract provides that, "[t]he District Ranger has the final authority on all decisions involving quarters." Gregory Ofner alleges that he needed approval from the District Ranger to purchase a mobile home attached to Forest Service land and District Ranger Riddle gave him approval and indicated he would be held to the 1988 Los Prietos Rules. Justin Moya and Bradley Christensen each also indicate that, at the time of the purchase of their mobile home, they were given a copy of the 1988 Los Prietos Rules and met with District Ranger Riddle, who they similarly allege was required to give them approval to purchase the mobile home. Plaintiffs note that the 1988 Los Prietos Rules provide, "[t]he District Ranger will have the final authority on all decisions in the mobile home park" and "[a]ny mobile home moved into the park must be approved by the District Ranger." Upon

---

[18] Plaintiffs do not allege that any limitation has been enforced on any of the plaintiffs' lengths of stay or that any of the plaintiffs have been forced to leave a mobile home pad. Although Brian Sexton suggests that he was threatened with eviction and adverse, administrative action for refusal to sign a new housing agreement following the issuance of the January 15, 2008 Los Padres Forest Quarters Policy, he does not indicate or offer evidence that eviction or adverse, administrative action actually occurred. To the contrary, the Joint Stipulation of Facts provides that "[n]one of the plaintiffs have been forced by the Forest Service to leave their mobile home pads," and no plaintiff has informed the court since filing the Joint Stipulation of Facts that they have been forced to vacate.

review, the 1988 Los Prietos Rules do not explicitly require approval for purchases of mobile homes.

Plaintiff Arthur Wesley Preston alleges that he received a similar guarantee from District Ranger Patrick Pontes. In addition, plaintiff John Brack alleges the same regarding acting District Ranger, Sharon Sprouse. Mr. Brack further claims "[t]here was nothing in the Rental Agreement, affective [sic] since May 1988, I signed on July 9, 2002 or the Rent Computation Schedule I signed on February 13, 2003 to make me think otherwise." Mr. Brack alleges that the "tacit approval by management for permanent or long-term stays in the park" was negligent and the result of long term lack of oversight. Similarly, Carrie Landon indicated that she based her belief regarding the length of stay, not on documentation, but on past practices and on information provided by District Ranger John Bridgewater regarding his extensive personal experience with housing. She indicated she does not recall if she and District Ranger John Bridgewater discussed housing and the rights of subsequent purchasers "in terms of rules and regulation, but he [District Ranger John Bridgewater] definitely had a concept of as long as an employee was in good standing as an employee, there would be no reason for them not to stay as long as they needed to."

The terms of plaintiffs' rental documents with the Forest Service were clear and unambiguous. No guarantees were made in the documents regarding length of stay on the pads or rights guaranteed to successor purchasers. The terms of the documents are clear and unambiguous, including the right of the Forest Service to set conditions and exercise an option to terminate mobile home pad rentals. The Quarters Assignment Agreement in the Forest Service Standard Rent Documents explicitly provided the Forest Service or the plaintiffs with the ability to terminate a plaintiffs' occupancy upon 90 days written notice. Therefore, the court declines to examine extrinsic evidence. See TEG-Paradigm Envtl., Inc. v. United States, 465 F.3d at 1338; Bell BCI Co. v. United States, 570 F.3d at 1341 ("Only in the event of an ambiguity may we examine extrinsic or parole evidence."). The plain language of the contract controls. See Marquardt Co. v. United States, 101 Fed. Cl. at 268; see also Mata v. United States, 114 Fed. Cl. at 745 ("The plain language of the contract will be viewed as controlling if it is unambiguous on its face."). It is not enough that the parties disagree as to the terms of the writings to conclude that there is ambiguity. Rather, both interpretations must fall within a "zone of reasonableness." See Metric Constructors, Inc. v. NASA, 169 F.3d at 751. Although plaintiffs may have formed certain beliefs based on their understanding of past practice, custom, or alleged, but not documented, representations by District Rangers, the plain language of the rental documents is not altered by plaintiffs' assertions and the rental agreement, documents are not reasonably susceptible to plaintiffs' interpretation. See Marquardt Co. v. United States, 101 Fed Cl. at 268 ("Generally, the plain language of a contract controls; however, language that is reasonably susceptible to more than one interpretation, where 'each [interpretation] . . . is found to be consistent with the contract language,' may be considered ambiguous." (quoting Cmty. Heating & Plumbing Co. v. Kelso, 987 F.2d at 1579) (alterations in Marquardt Co. v. United States)); see also NVT Techs., Inc. v. United States, 370 F.3d at 1159; Ace Constructors, Inc. v. United States, 499 F.3d 1357, 1361 (Fed. Cir. 2007). Having found no ambiguity, the court should not

look to extrinsic evidence to determine the intent of the parties or to introduce an ambiguity where none exists. See McAbee Constr., Inc. v. United States, 97 F.3d at 1434 ("'[E]xtrinsic evidence . . . should not be used to introduce an ambiguity where none exists'" and "'[E]xtrinsic evidence will not be received to change the terms of a contract that is clear on its face.'" (internal citations omitted) (quoting Interwest Constr. v. Brown, 29 F.3d at 615; Beta Sys., Inc. v. United States, 838 F.2d at 1183) (alterations in McAbee Constr., Inc. v. United States)). Thus, plaintiffs' offers of extrinsic evidence such as past practice or alleged conversations with Forest Service District Rangers do not preclude summary judgment because the facts are ultimately not relevant or unnecessary to the court's analysis. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48.

Plaintiffs Brian Sexton, Bradley Christensen, Justin Moya, Gregory Ofner, John Brack, and Arthur Wesley Preston each allege in their responses to defendant's motion for partial summary judgment that a District Ranger not only made representations to them that as long as they were employed by the Forest Service, worked on the Santa Barbara Ranger District and abided by the applicable rules and regulations, that they would be allowed to stay in the mobile home park as tenants, but also appear to allege that these representations constituted separate oral agreements between the Forest Service and the plaintiffs. Plaintiffs, however, have provided no evidence or documentation in support of these alleged District Rangers' promises. Nor do plaintiffs establish that a District Ranger would have had the authority to enter into a verbal contract guaranteeing a length of stay for plaintiffs or their pad successors beyond the terms of what is included in the written documents. It is well established that the government is not bound by the acts of its agents beyond the scope of their actual authority. See Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947); Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997); Urban Data Sys., Inc. v. United States, 699 F.2d 1147, 1153 (Fed. Cir. 1983). Contractors dealing with the United States must inform themselves of a representative's authority and the limits of that authority. See Fed. Crop Ins. Corp. v. Merrill, 332 U.S. at 384 ("[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority."); Trauma Serv. Grp. v. United States, 104 F.3d at 1325 ("[T]his risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations on their authority."); see also Flexfab, LLC v. United States, 424 F.3d at 1260; Total Med. Mgmt., Inc. v. United States, 104 F.3d 1314, 1321 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 522 U.S. 857 (1997); Council for Tribal Emp't Rights v. United States, 112 Fed. Cl. 231, 243 (2013), aff'd, 556 F. App'x 965 (Fed. Cir. 2014); Jumah v. United States, 90 Fed. Cl. 603, 612 (2009), aff'd, 385 F. App'x 987 (Fed. Cir. 2010); Aboo v. United States, 86 Fed. Cl. 618, 627, aff'd, 347 F. App'x 581 (Fed. Cir. 2009).

A government representative with the requisite authority generally is a required element of both express and implied-in-fact federal contracts. An officer of the United States who does not possess express contracting authority may bind the United States under limited circumstances, but only if he or she has "implied actual authority." See

Winter v. Cath-dr/Balti Joint Venture, 497 F.3d 1339, 1344, 1346 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007); see also Salles v. United States, 156 F.3d 1383, 1384 (Fed. Cir. 1998); H. Landau & Co. v. United States, 886 F.2d 322, 324 (Fed. Cir. 1989) ("Authority to bind the [g]overnment is generally implied when such authority is considered to be an integral part of the duties assigned to a [g]overnment employee.") (quoting J. Cibinic & R. Nash, Formation of Government Contracts 43 (1982)); Vargas v. United States, 114 Fed. Cl. 226, 235 (2014). Plaintiffs bear the burden of proving that the District Ranger had such authority. The fact that plaintiffs may have believed the District Ranger held such authority is not sufficient. See Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1432 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1998); cert. denied, 525 U.S. 1177 (1999); see also Trauma Serv. Grp. v. United States, 104 F.3d at 1327 (The plaintiff "must prove all of the requirements for a binding contract in order to prevail" and "must allege facts sufficient to show that the Government representative who entered into its alleged implied-in-fact contract was a contracting officer or had implied actual authority to bind the Government.").

There is an absence of evidence in the record before the court to demonstrate either express or implied authority on the part of the District Rangers identified by plaintiffs to enter into the terms of the verbal agreements plaintiffs allege. Plaintiffs point to a provision in the 1988 Los Prietos Rules that indicates, "[t]he District Ranger will have the final authority on all decisions in the mobile home park" and Brian Sexton points to a provision in the June 2000 Los Padres Rental Contract that indicates "[t]he District Ranger has the final authority on all decisions involving quarters." These broad provisions without more, however, do not establish the District Ranger's contractual authority to enter into a binding contract on behalf of the United States regarding plaintiffs' length of stay or transferability of such lengths of stay to pad successors, especially in light of the written documents in the record before the court. Although District Ranger Sharon Sprouse appears to have signed the 1988 Los Prietos Rules in the record for John Brack, as well as signed the 1988 Los Prietos Rules and June 2000 Los Padres Rental Contract in the record for Brian Sexton, and District Ranger Patrick Pontes signed the 1988 Los Prietos Rules in the record for Arthur Wesley Preston, the terms and plain language of the documents control.[19] Moreover, for plaintiffs Nathan Allen, Daniel Fawcett, Justin Moya, Gregory Ofner, Arthur Wesley Preston, Nicholas Riley, Bradley Christensen, Brian Sexton, and Carrie Landon, the General Terms and Conditions in the Forest Service Standard Rent Documents were not signed by the District Rangers, but, rather, by Judy Reynolds, a Property Management Officer with the Forest Service. For Casey Allen, however, the Agency/Bureau Representative signature is merely a generic agency name, "USDA," and does not contain a specific individual's

---

[19] The record also includes a signed copy of the 1988 Los Prietos Rules for Daniel Fawcett, but there was no signature by a government representative. For plaintiffs Nathan Allen, Justin Moya, Gregory Ofner, and Nicholas Riley, there was no signed version of the 1988 Los Prietos Rules in the record. Bradley Christensen indicated he was unsure whether he signed the 1988 Los Prietos Rules and there is not a signed copy for him in the record.

signature. For plaintiffs, John Brack and Ryan Webster, an Agency/Bureau Representative did not sign the General Terms and Conditions page.

Plaintiffs do not point to any evidence in the record to support their allegations regarding promises made by any of the District Rangers. Moreover, as defendant points out in its reply brief, the Joint Stipulation of Facts and the record before the court include evidence that is contrary to or casts doubt on the credibility of plaintiffs' allegations. First, plaintiffs admit in the Joint Stipulation of Facts that they "based their belief that they could stay in the mobile home park for as long as they were employed by the Forest Service based upon general knowledge or common knowledge or word of mouth." During his deposition, Daniel Fawcett added that, with respect to his expectation of staying in the mobile home for the entirety of his Forest Service employment, he "read it on the contract. And then also, I had worked for multiple people that had lived in the trailer park at one time or another, and, you know, had spent a lot longer than I had lived there." Mr. Fawcett indicated that "[m]ore so than the district ranger didn't necessarily explain anything specific to me. It was just kind of an understanding." The Joint Stipulation of Facts makes no mention of conversations with the District Rangers. As defendant notes, aspects of plaintiffs' deposition transcripts also "cast doubt on the credibility of the assertions" that plaintiffs entered into verbal agreements with a District Ranger. For instance, the record reflects that, during their depositions, Justin Moya and Gregory Ofner separately indicated they had not spoken to District Ranger Riddle about specific rent issues prior to purchasing their mobile home. Additionally, Brian Sexton admitted during his deposition that he assumed he had been guaranteed a length of stay based upon discussions he had with other Forest Service employees who had rented mobile home pads. Mr. Sexton had the opportunity to speak at his deposition as to any conversation with District Ranger Riddle, but did not raise any allegations regarding verbal agreements at that time. During Bradley Christensen's deposition, he discussed conversations with District Ranger Riddle, indicating he was concerned with his ability to resell the mobile home and, at the time of purchase, that he believed District Ranger Riddle told him a person who bought his home would be afforded the same contract that he was getting, or, at a minimum, assured him that he could resell. Mr. Christensen conceded that "nowhere did she [District Ranger Riddle] say that this was the exact same contract that somebody else would receive, but she didn't tell me otherwise that it wasn't. So it was under my assumption that that was the same contract that somebody else would sign." Therefore, not only does there appear to be an absence of actual authority on the part of the District Rangers to promise unlimited stays and successor rights, but there also is an absence of evidence that specific promises were made by any of the District Rangers.

## CONCLUSION

The language of the written documents in the record is clear and does not include any guarantees regarding a Forest Service employee's ability to remain on a rented mobile home pad for the length of his or her employment with the Forest Service, or that an employee's pad rental rights could be transferred to any successor mobile home owners on the same pad under the same terms. Partial summary judgment is

appropriate in favor of defendant, with regard to count two of plaintiffs' complaint, the breach of contract claims. Therefore, count 2, the breach of contract claims, are, hereby, dismissed in the cases of Casey Allen, Case No. 12-42C; Nathan Allen, Case No. 12-4208C; John Brack, Case No. 12-4209C; Bradley Christensen, Case No. 12-4210C; Daniel Fawcett, Case No. 12-4211C; Carrie Landon, Case No. 12-4212C; Justin Moya, Case No. 12-4213C; Gregory P. Ofner, Case No. 12-4214C; Arthur Wesley Preston, Case No. 12-4215C; Nicholas Riley, Case No. 12-4216C; Brian Sexton, Case No. 12-4217C; and Ryan Webster, Case No. 12-4218C. Pursuant to RCFC 54(b), there being no just reason for delay, the Clerk of the Court shall enter **JUDGMENT** consistent with this opinion. Future proceedings on the remainder of the case will be scheduled by separate Order.

        **IT IS SO ORDERED**.

**MARIAN BLANK HORN**
**Judge**